## Commonwealth vs. Allen Rosario.

Hampden. May 2, 2005. - July 1, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Controlled Substances. Evidence,* Exculpatory, Relevancy and materiality. *Constitutional Law,* Self-incrimination. *Witness,* Self-incrimination.

At the trial of indictments charging distribution of heroin, the judge erred in curtailing the defendant's attempts to introduce evidence that a third party had committed the offenses (specifically, by exhibiting the alleged third-party culprit before the jury so that the codefendant, who testified at the defendant's trial, could identify the culprit in court as the person who had supplied the codefendant with heroin on the date in question), where the proposed presentation of the witness was highly probative on the critical issue in the case (i.e., identification) [556-559]; where the potential prejudice flowing from such a presentation (namely, that exhibiting the culprit before the jury while he remained silent and did not testify would effectively signal to the jury that he had asserted his privilege against self-incrimination pursuant to the Fifth Amendment to the United States Constitution) was of a sort that could be readily addressed by way of a standard instruction [559-560]; and where there was no other consideration present to justify preventing or restricting the physical presentation of the alleged culprit to the jury [560-561]; as the error was not harmless, this court set aside the convictions and remanded the case for a new trial [561-562].

Indictments found and returned in the Superior Court Department on June 26, 2001.

The cases were tried before *Tina S. Page,* J., and a motion for a new trial was heard by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Wendy H. Sibbison* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

Sosman, J. The defendant was convicted of distribution of heroin (second offense), and distribution of heroin in a school zone. G. L. c. 94C, §§ 32 (*b*), 32J. On appeal from the convic-

tions and the denial of his motion for a new trial, the defendant contends that the trial judge erroneously curtailed his efforts to introduce evidence that a third party committed the offenses. Specifically, the defendant sought to exhibit the alleged third-party culprit before the jury so that the codefendant (who testified at the defendant's trial) could identify him in court as the person who had supplied him with heroin on the date in question. However, the judge did not allow this exhibition and in-person identification of the alleged culprit because he had asserted his privilege against self-incrimination pursuant to the Fifth Amendment to the United States Constitution, and, the judge feared, exhibiting him while he remained silent and did not testify would effectively signal to the jury that he had asserted that privilege. See *Commonwealth* v. *Fisher*, 433 Mass. 340, 350 (2001); *Commonwealth* v. *Gagnon*, 408 Mass. 185, 195-198 (1990); *Commonwealth* v. *Hesketh*, 386 Mass. 153, 156-157 (1982). We agree with the defendant that the judge's stated basis for excluding the evidence was erroneous, and lacking any other ground for denying his request to display the alleged perpetrator before the jury for purposes of an in-court identification, the judge's ruling constituted an abuse of discretion. The error was not harmless, and we therefore set aside the convictions and remand the case for a new trial.

1. *Facts.* Over the course of two months in the spring of 2001, the Holyoke police and agents from the Drug Enforcement Administration (DEA) conducted an undercover operation designed to identify street-level drug dealers for later apprehension. The undercover agents would purchase drugs on the street, then leave without making or instigating an arrest. Other officers conducting surveillance would thereafter approach the dealer on some pretext, obtain identification of the person, and then let him proceed on his way. After two months of this undercover operation, the police arrested the many dealers who had been observed and identified. The delay in making any arrests allowed the undercover agents purchasing the drugs to continue doing so for a lengthy period without raising suspicion among the dealers in the area.

The sale to an undercover agent that formed the basis of the charges against the defendant took place on May 10, 2001, dur-

ing the second week of the operation. On that date, DEA Agent Daniel Genese drove an unmarked pickup truck to the area of Hamilton and South East Streets in Holyoke. Genese pulled his truck up alongside a man later identified as the codefendant, Hector Colon, and asked where he could get two bags of heroin. Colon told him to come back in a few minutes. Genese drove off, returned a short while later, and again drove up to Colon. Colon advised him that he was "still waiting for the guy," and Genese drove off again. When Genese came back to the area a third time, Colon motioned him to pull over to the curb near the intersection. Genese did so, stopping the vehicle approximately twenty-five yards in front of Colon. In his rear view mirror, Genese observed a man on a bicycle come up to Colon. The man was clothed in a red shirt and blue pants. He handed something to Colon, who then returned to Genese and gave him two bags of heroin in exchange for twenty dollars. Colon crumpled the bills in his hand, walked back to the man on the bicycle, and handed him a small object. Genese then drove off. The entire exchange between the man on the bicycle, Colon, and Genese, had taken between thirty and sixty seconds.

Detective Sean Shattuck observed the transaction from a surveillance van, and radioed descriptions of the suspects to other police officers nearby. (As to the person who had supplied drugs to Colon, that description consisted only of his clothing and the fact that he was riding a bicycle.) Those officers in turn drove to the area and spoke with Colon, thereby obtaining his identity. They proceeded farther down Hamilton Street, and spoke with a man on a bicycle wearing a red shirt and blue pants, who was standing with a group of other men. The officers obtained identification from each of the men in the group. According to the officers, the man on the bicycle identified himself as the defendant, Allen Rosario. Detective Shattuck testified that, still using binoculars, he had observed the officers' interactions with both Colon and later with the man on the bicycle, and he confirmed that the officers had spoken to and obtained identification from the same persons who had been involved in the transaction with Genese. Consistent with the design of the undercover operation, neither Colon nor the defendant was arrested at the time.

Later that day, Genese was shown two photographic arrays, one containing a photograph of Colon and the other containing a photograph of the defendant. Genese identified Colon as the person who had sold him the two bags of heroin, but he made no identification from the second array, and he made no identification of the defendant at trial. Detective Shattuck was the only witness to the transaction who identified the defendant at trial.

By the time of the defendant's trial, Colon had already pleaded guilty and had served his sentence. He testified for the defense, claiming that the defendant was not and never had been his supplier. Colon testified that his supplier was a man he called by the nickname "Prieto," and that he had purchased drugs from Prieto on approximately four occasions. On the day in question, he had called Prieto on his cellular telephone, ordered ten bags of heroin, and proceeded to the agreed location for the exchange. The price for the ten bags was fifty dollars, but Colon only had thirty dollars on him at the time. Prieto arrived wearing a red shirt and blue pants, and riding a bicycle, just as Genese had described. Colon obtained the ten bags from Prieto, gave him the thirty dollars he had, sold two of the bags to Genese, and then returned to pay Prieto the final twenty dollars he owed him. Colon kept the remaining eight bags of heroin for his personal use.

Colon testified that he did not know Prieto's real name. While in custody awaiting trial, Colon had seen documents referring to his codefendant as "Allen Rosario." Colon had seen the defendant in the Holyoke area but had not known his name. According to Colon, another inmate explained to him who "Allen Rosario" was, whereupon Colon realized that the man charged as his codefendant was not his supplier. Colon agreed to testify (despite being advised that he could still be charged with conspiracy), explaining his view that it was not fair "that somebody's going to do time for something they didn't do." He testified that the defendant was not Prieto, that the defendant had never supplied him with any drugs, and that he had seen the defendant around town but had never had any prior interaction with him.

Another defense witness, Alberto Miranda, testified that he

had been with the defendant and some other acquaintances when they had been questioned by the police outside a store. The defendant was not on a bicycle, and the defendant left on foot after the interaction with the police.

The defendant testified that he recognized Colon but did not know him, and that he had never sold him heroin. He recalled being questioned by police officers one day when he was standing with a group of friends in front of a store near where he lived and worked. He did not recall what clothes he had on that day,[1] but was certain that he had not been on a bicycle. He testified that he did not own or ride a bicycle.

In cross-examination of the defendant and Colon, and in closing argument, the Commonwealth took the position that Colon was disavowing the defendant's involvement in order to protect his supplier. The theory was that Colon, a long-time heroin addict recently released from prison and with inadequate means to support his daily habit, was currying favor with his supplier in the hope that, if the defendant were acquitted, the defendant would be inclined to be generous with him in future drug transactions. The prosecutor argued that there was no other supplier, and belittled Colon's testimony concerning "this mythical Prieto."

2. *The excluded evidence.* Prior to trial, defense counsel, for reasons that are not clear on this record, had come to believe that one Pedro Colon (Pedro), who was then incarcerated, was the man Hector Colon knew as Prieto. Defense counsel advised the judge that he intended to call Pedro as a witness, and had Pedro brought to court for that purpose. Among the paperwork that had accompanied Pedro to the court house was a Department of Correction photograph. When asked whether he intended to introduce the photograph, defense counsel advised that he did not intend to use the photograph itself. Counsel predicted that Pedro would invoke his Fifth Amendment privilege and refuse to testify, in which case the defendant might want to exhibit Pedro before the jury in person. The prosecutor expressed concern that defense counsel might try, in some fashion, to communicate to the jury that Pedro was assert-

[1]The defendant was not arrested until January, 2002, some seven months after the incident.

ing his Fifth Amendment privilege. Defense counsel assured the judge that he would not do so. As to the photograph, the prosecutor requested that, if it were to be introduced, it should be sanitized to remove reference to the Department of Correction. The judge indicated that the photograph could be sanitized.

The judge appointed counsel for Pedro, and after consultation with his client, counsel advised the judge that Pedro would assert his Fifth Amendment privilege with respect to all questions. The judge conducted a voir dire, during which Pedro asserted the privilege, refusing to testify even as to his name. Acknowledging that Pedro was asserting a valid privilege, defense counsel advised the judge that he would still "have to" exhibit Pedro in person before the jury in order to "have somebody identify him" as Colon's supplier. Counsel pointed out that Pedro's Fifth Amendment privilege was a privilege not to testify, not a privilege to prevent revelation of his physical features. The judge opined that defense counsel did not have a right to "prance [Pedro] in front of the jury," but did not make an immediate ruling on the issue.

The next trial day, shortly before the Commonwealth rested, the prosecutor reminded the judge that she needed to make a ruling on whether defense counsel would be allowed to "parade" Pedro before the jury as part of the defense case. The judge then indicated that she had decided not to permit any display of Pedro before the jury, because "parading Pedro Colon before the jurors without him opening his mouth is tantamount to telling them that he's exercised his Fifth Amendment privilege." In her later ruling denying the defendant's motion for a new trial, the judge elaborated on her concern that the proposed display of Pedro was the functional equivalent of having Pedro invoke his Fifth Amendment privilege in front of the jury:

> "Displaying Pedro Colon to the jury so a defense witness could identify him as the true culprit would differ only slightly from compelling a witness to invoke the privilege against self-incrimination in front of the jury. Only a small inferential step exists between the two. Although the jury would not hear an audible invocation of

the privilege, displaying Pedro Colon to the jury would invite [them] to speculate that he committed the crime. See [*Commonwealth* v.] *Gagnon*, 408 Mass. [185,] 197 [(1990)]. The jury could assume that he tacitly admitted guilt by his silence, and could further speculate that he would deny the allegations under oath if he was innocent. *Id.* Moreover, displaying Pedro Colon to the jury would produce evidence of little or no probative value as to the defendant's guilt or innocence. A mere display of Pedro Colon's physical features for an in-court identification, without more, would establish only that Pedro Colon may resemble Rosario and that Hector Colon believed 'Prieto' was Pedro Colon. . . . In exercising its discretion, this court ruled, in essence, that the 'strong and illegitimate impact' of allowing Pedro Colon to appear in front of the jury while remaining silent outweighed any probative value the evidence might have had in bolstering Hector Colon's credibility. See *id.*"

In denying the motion for a new trial, the judge also noted that defense counsel had not made an offer of proof that Colon would identify Pedro as his supplier, and that defense counsel chose not to introduce the photograph of Pedro.

3. *Discussion.* The defendant contends that the judge's ruling, preventing him from displaying Pedro to the jury, violated his "constitutional right to present evidence that another may have committed the crime." *Commonwealth* v. *Conkey*, 443 Mass. 60, 66 (2004). Relying on *Commonwealth* v. *Conkey*, *supra* at 66-67 & n.14, he also contends that we should review the judge's decision using "independent scrutiny," and not merely for an abuse of discretion. In that case, although the victim had been murdered during what appeared to be a sexual attack, the defendant had been precluded from introducing evidence, in whatever form, on the subject of the alleged third-party culprit's history of sexual aggression toward women. *Id.* at 66, 67-68. The judge's reason for excluding the entire line of evidence was based on his assessment that the evidence was too remote in time, and that the other aggressive interactions with women were too dissimilar from the circumstances surrounding the murder. *Id.* at 68. In conducting an independent examination whether the evidence of the alleged third-party culprit's prior

conduct was too remote in time and too dissimilar, we did not intend to displace the judge's customary discretion with regard to the admission of evidence. Indeed, in remanding the matter for a new trial, we expressly noted that the judge would be able to "exercise normal discretion with respect to any third-party culprit evidence." *Id.* at 70 n.17.

Here, the judge did not preclude the defendant from introducing evidence that someone else had acted as Colon's supplier, or otherwise make any ruling that excluded an entire category of third-party culprit evidence. Her ruling only prevented the defendant from making a particular demonstration before the jury, and she did so because of her belief that the demonstration in question would be of minimal probative value yet would result in juror speculation about a witness's invocation of the Fifth Amendment. A judge has discretion to exclude relevant evidence on the ground that its probative value is outweighed by the risk of confusion or unfair prejudice. See *Commonwealth* v. *Roderick*, 411 Mass. 817, 819 (1992); *Commonwealth* v. *Lewin (No. 2)*, 407 Mass. 629, 631 (1990), and cases cited; Proposed Mass. R. Evid. 403. A judge's assessment that the probative value of proffered evidence is outweighed by some countervailing prejudicial effect is a discretionary ruling that will only be disturbed for an abuse of that discretion. See *Commonwealth* v. *Roderick, supra* at 819-820. See also *Commonwealth* v. *Lewin (No. 2), supra,* quoting *Commonwealth* v. *Young,* 382 Mass. 448, 462-463 (1981) (upholding judge's weighing in absence of "palpable error"). However, "in balancing the probative value against the risk of prejudice, the fact that evidence goes to a central issue in the case tips the balance in favor of admission." *Commonwealth* v. *Jaime,* 433 Mass. 575, 579 (2001). See *Commonwealth* v. *Medeiros,* 395 Mass. 336, 352 (1985).

Here, the judge's sole reason for excluding the defendant's proposed display of Pedro was her concern that doing so was "tantamount" to having Pedro assert his Fifth Amendment privilege before the jury. We agree with the defendant that nothing in the presentation of Pedro for an in-court identification of him as Colon's supplier raised the problems posed by having a witness invoke the Fifth Amendment in front of the jury. A wit-

ness may not be called to the stand solely to assert the Fifth Amendment in front of the jury because there is no probative value to such an assertion of privilege (as it may be prompted by a variety of considerations, wholly unrelated to the case being tried), but there is a high potential for prejudice (as jurors are likely to treat such an assertion of privilege as an admission of guilt). See *Commonwealth* v. *Gagnon,* 408 Mass. 185, 196-198 (1990); *Commonwealth* v. *Hesketh,* 386 Mass. 153, 157 (1982). Here, by comparison, there was obvious probative value to the proposed display of Pedro to the jury. Defense counsel expected that Colon would identify Pedro as his supplier Prieto, and the identification of Colon's supplier was the entire crux of the case.[2] It was one thing for Colon to testify that he knew only a nickname for his supplier, testimony that the prosecutor would belittle as a reference to "this mythical Prieto," and quite another for Colon to identify a person who was physically present in the court room. An in-court identification of Pedro could not be dismissed as a false accusation of someone for whom the accusation could not be of any consequence. Finally, where the entire premise of the defense was misidentification stemming from one brief observation of the transaction between Colon and his supplier, an observation made through binoculars more than two years prior to trial, it would be highly relevant for the jury to observe how Pedro's physical features compared with those of the defendant. If the jury saw Pedro in person, and heard Colon's identification of him as Prieto, they could assess how likely or unlikely it would be that the surveilling detective would mistake the defendant for Pedro. In short, the

---

[2]We reject the argument that defense counsel failed to make an adequate offer of proof on this point. After Pedro's assertion of the Fifth Amendment during voir dire, counsel indicated that he would nevertheless need to have him brought physically into the court room and displayed to the jury if he had "somebody identify him as the Pedro Colon that is the subject of this sting." While this exchange, standing alone, might not be an adequate offer of proof, the judge later assured defense counsel that his rights were preserved with respect to her ultimate ruling not to allow any display of Pedro. Even without any formal offer of proof, the judge understood the purpose for which defense counsel continued to press his request to present Pedro to the jury. There would be no reason for defense counsel simply to display Pedro to the jury without any testimony from anyone as to who this man was and what he had to do with the case, and there is no suggestion on this record that defense counsel was requesting to engage in such a pointless exercise.

proposed presentation of Pedro was highly probative on the critical issue in the case.

As to the potential prejudice flowing from such a presentation of Pedro, the judge's concern was that it would lead jurors to "speculate that [Pedro] committed the crime." Of course, if Colon identified Pedro as the Prieto from whom he obtained heroin, the jury's consideration whether Pedro committed the crime would not be a matter of "speculation." The jury would have direct evidence of Pedro's commission of the crime, and could assess the reliability of that evidence as they saw fit.

To the extent the judge was concerned that jurors might speculate as to why Pedro did not testify, that concern was no different from the customary concern that jurors might wonder about witnesses who are mentioned at trial but who do not testify. That jurors might speculate about why Pedro did not testify, or even speculate about his assertion of the Fifth Amendment, did not pose any unusual form of prejudice to either side. That concern is routinely addressed by standard instructions telling jurors not to speculate. Or, if the judge felt that something more pointed was necessary with respect to Pedro, she could have given a specific instruction that they were not to speculate about why Pedro did not testify or about what his testimony would have been. By comparison, when a witness actually invokes the Fifth Amendment in front of the jury, the jury's immediate (and inaccurate) assessment of what that means is more difficult to dispel — the jury have heard the witness state that the answer would tend to incriminate him, and a juror would not think it was inappropriate speculation to interpret that as a substantive admission of wrongdoing. See *Commonwealth* v. *Gagnon*, *supra* at 197, and cases cited; *Commonwealth* v. *Hesketh*, *supra* at 157, and cases cited.

Thus, in the case of a witness's invocation of the Fifth Amendment in front of the jury, the judge is presented with the proposed presentation of evidence that has no probative value whatsoever but is "highly likely to have a strong and illegitimate impact on the jury's deliberations." *Commonwealth* v. *Gagnon*, *supra*. Here, however, the defendant sought to introduce evidence that was highly probative, and to the extent that it posed the potential for juror misuse, that potential

prejudice was of a sort that could be readily addressed by way of a standard instruction. The concerns raised by the invocation of the Fifth Amendment in front of the jury were not raised by defense counsel's proposal to present Pedro to the jury so that a witness could be asked to make an in-court identification of him as Prieto. We thus find the judge's equating of the two to be in error.

We recognize, of course, that other considerations may justify preventing or restricting the physical presentation of someone to the jury, but none of those considerations was present here. A judge has discretion to place limitations or requirements on any such presentation to avoid overly dramatic or inflammatory displays. For example, the judge had considerable discretion over the logistics of how Pedro would be escorted into the court room, and where he would be placed before the jury. There was nothing in defense counsel's proposal that suggested any desire to "parade" or "prance" Pedro in front of the jury box, and to the extent that the judge feared that the display might involve some unseemly "parading" or "prancing," she had discretion to see to it that the display was made with appropriate decorum. We can also envision concerns a judge might have about a person's being disruptive during the display and identification before the jury, and a judge has broad discretion to impose limitations or even to exclude such a display if there is a demonstrated risk of such disruption. Again, however, no such concern appears on this record. There was no indication that Pedro had any tendency to "act out" in the court room — he had behaved appropriately during the voir dire. His appointed counsel was present to assist as necessary during any presentation before the jury, and the judge expressed no concern about potential disruptive behavior. On this record, we see no valid reason for the judge to have precluded the defendant from presenting Pedro to the jury and asking Colon whether he was Prieto, and it was therefore an abuse of discretion to have excluded this highly relevant exculpatory evidence.

The Commonwealth argues that the judge committed no error because she had previously indicated her willingness to allow the introduction of a photograph of Pedro. That the defendant might have had other, less effective means of identifying Pedro

does not justify the judge's exclusion of an in-court, in-person identification. In the absence of some valid reason for precluding the defendant from displaying Pedro himself to the jury for purposes of an in-court identification and comparison with the defendant, the exclusion of that evidence remains an abuse of discretion. Here, the issue was whether Colon was inventing the Prieto to whom he referred, and the defense had sound strategic reasons for wanting Colon to identify a real live person as Prieto, not just to identify a photograph. And, for the jury's purposes of considering whether the two men could have been mistaken for one another, seeing Pedro in person to compare with the defendant, also before them in person, was of far greater value than trying to compare the defendant with a single photograph. There are many situations where, for the purpose of the issues being tried, a photograph is the functional equivalent of the real item or person. This is not one of those cases. Where there was no legitimate reason for restricting the defendant to the use of a photograph, it was an abuse of discretion for the judge to have done so.[3]

We cannot say that the error was harmless. The issue whether the defendant had been reliably identified as the perpetrator, or whether he had been mistakenly identified instead of Prieto, was at the center of the case. Cf. *Commonwealth* v. *Mandeville*, 386 Mass. 393, 400 (1982) (erroneous exclusion of evidence harmless where proffered evidence went to "wholly collateral" matter). The Commonwealth's identification evidence was sufficient, but not overwhelming, given that Genese had been unable to make any identification, and the sole identifying witness had viewed the perpetrator only briefly through binoculars some two years earlier. Shattuck's belief that the other officers had located the right person (a belief that appears predicated largely on the defendant's clothing and his disputed use of a bicycle at the time) was the entire basis for the Commonwealth's identification of the defendant. In light of that arguably vulner-

---

[3]The defendant did not introduce the photograph of Pedro, nor was Colon asked to identify the photograph. That the defense opted not to use the photograph does not operate to cure the judge's error. Where a judge has erroneously precluded a defendant from presenting his defense in the most effective manner, the defendant is not required to employ the less effective means allowed him in order to preserve the error for appeal.

able identification evidence, the defendant's ability to present the person alleged to be Prieto, to have Colon identify him as Prieto, and to give the jury an opportunity to compare the physical features of the alleged Prieto with those of the defendant was of great importance to his defense. Moreover, when the defendant was precluded from displaying a real person as Prieto, the prosecutor took advantage of that error by referring to "this mythical Prieto" during closing argument. Whether the jury would have believed Colon's identification of Pedro as Prieto is beyond our ability to determine. At least, however, Colon could not so easily have been accused of inventing a "mythical" person as his supplier. "Our decision is unaffected by the fact that the offered evidence is capable of an interpretation consistent with the defendant's guilt. The point is that the defendant was entitled to have the jury make the decision as to the significance of this evidence in the context of the other evidence in the case." *Commonwealth* v. *Keizer*, 377 Mass. 264, 268 n.3 (1979). The convictions must therefore be reversed, the verdicts set aside, and the case remanded for a new trial.

*So ordered.*