BLAKE, J.
*741 Following a jury trial in the District Court, the defendant, Edward Galarza, was convicted of various firearm related offenses.[1] On appeal, the defendant claims *511 that (1) the motion judge erred in denying his motion to suppress, (2) the trial judge denied him the opportunity to present certain defenses, and (3) the evidence was insufficient on the conviction of possession of a loaded firearm without a license. We affirm in part and reverse in part.
1. Background. The jury could have found the following facts. On September 15, 2015, at approximately 1:50 A.M. , State police Trooper Matthew Stone was on patrol in a marked sport utility vehicle on Armory Street in Springfield, a high crime area. Stone saw a pickup truck traveling in excess of the posted speed limit. As Stone increased his speed to catch up with the pickup truck, the truck rapidly slowed down. Stone noticed that the rear registration plate lights were not working, and that the driver's side mirror was cracked. After stopping the pickup truck, Stone approached it and saw the operator, later identified as the defendant, bend forward slightly and move to his right. As the defendant bent forward, Stone could no longer see his head and torso. When Stone reached the driver's side window, the defendant was speaking on a cellular telephone (cell phone) "very urgently, very nervously." The defendant asked the person on the other end of the cell phone call to come to the location of the stop. Stone saw that the defendant was "very nervous," "panicked," and "breathing very heavily."
Stone asked the defendant to end the call; the defendant refused; Stone again asked the defendant to end the call. This time, without ending the call, the defendant turned toward Stone and told him that the party on the other end of the cell phone call owned the pickup truck. Stone asked the defendant for his driver's license and the pickup truck's registration. The defendant produced only his license, telling Stone that the registration was not in the truck. When asked how he knew that, the defendant answered that "he just knew." Over the speaker on the cell phone, Stone heard the voice of a third party tell the defendant two or three times that the registration was in the center console. When Stone *742 asked the defendant about this, he responded by opening the glove box and quickly closing it. He said, "[S]ee, it's not in there." Stone responded that the third party said the registration was in the center console, not the glove box. The defendant placed his arm over the center console and refused to open it, in an effort to block access to it.
The defendant became extremely nervous and began to look around. Stone was concerned that the defendant would either try to flee or fight; Stone was also concerned for his safety. As a result, Stone ordered the defendant not to move. At the same time, a Springfield police officer drove by and Stone signaled that he needed assistance. Additional Springfield police officers soon arrived on the scene. Stone ordered the defendant to get out of the pickup truck. Although not yet under arrest, the defendant was handcuffed. Meanwhile, Stone returned to the pickup truck and opened the center console, where he observed a handgun. Stone asked the defendant to produce a "license to carry," and the defendant responded that he did not have one. The defendant was then arrested and given Miranda warnings. The gun was loaded with one round of ammunition in the chamber and seven rounds of ammunition in the magazine.[2]
*512 Stone called for a tow truck.[3] While the pickup truck was being prepared to be towed, an individual arrived, later identified as Albin Medina, who said he was its owner. Stone recognized Medina's voice as the same one that he heard on the cell phone speaker; Medina confirmed that, in fact, it was. Stone verified that Medina owned the pickup truck and had a driver's license. Stone asked him if there was anything in the pickup truck that Stone needed to be aware of; Medina said no. Stone then released the pickup truck to him.
2. Motion to suppress.[4] a. Exit order. The defendant contends that the motion judge erred in denying his motion to suppress because the exit order, patfrisk,[5] and search of the pickup truck's center console amounted to an unreasonable warrantless search. "In reviewing a ruling on a motion to suppress, we accept the *743 [motion] judge's subsidiary findings of fact absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law." Commonwealth v. Cawthron, 479 Mass. 612, 616, 97 N.E.3d 671 (2018) (quotation omitted). "We review independently the application of constitutional principles to the facts found." Commonwealth v. Amado, 474 Mass. 147, 151, 48 N.E.3d 414 (2016) (quotation omitted).
Here, the pickup truck was stopped for speeding. Police officers are warranted in stopping a motor vehicle for traffic violations. See generally Commonwealth v. Buckley, 478 Mass. 861, 865-866, 90 N.E.3d 767 (2018). The defendant does not challenge the legality of the stop. Instead, he contends that Stone did not have reasonable suspicion to order the defendant to get out of the pickup truck. An exit order is warranted in three situations: (1) "when a reasonably prudent [person] in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger"; (2) "if the officer developed a reasonable suspicion based on specific and articulable facts that the [subject of the exit order] was engaged in, or about to engage in, criminal activity"; and (3) "where the police were conducting a search of the automobile on other grounds." Amado, 474 Mass. at 152, 48 N.E.3d 414 (quotations omitted). "The police are not required to gamble with their personal safety ... and are entitled to take reasonable precautions for their protection." Commonwealth v. Cabrera, 76 Mass. App. Ct. 341, 350, 921 N.E.2d 1026 (2010) (quotations omitted). The defendant parses the facts to suggest that, viewed independently, the defendant's nervousness, his ducking down, and the high crime area where the stop occurred were not enough. However, these facts must be viewed in the totality of the circumstances. See Commonwealth v. Stampley, 437 Mass. 323, 325-326, 771 N.E.2d 784 (2002). Viewing the evidence through the lens of an experienced, trained trooper, as the motion judge did, the exit order was proper. The motion judge articulated a multitude of factors that justify the exit order. As Stone approached the pickup truck, the defendant ducked down; he ignored Stone's command to end the cell phone call multiple times; he appeared nervous and frantic; he refused to open the center console despite information that the pickup truck registration was contained in *513 it; he put his hand over the center console; the pickup truck was stopped in a high crime area at 1:50 A.M. ; and he had a single key, without a ring on it, which in Stone's opinion was consistent with theft of a motor vehicle. This constellation of facts justify the exit order because of an objectively reasonable *744 concern for officer safety.
b. The handcuffing. The defendant's argument that he was arrested when the police placed him in handcuffs fares no better. The defendant's brief detention prior to the discovery of the firearm did not rise to the level of a formal arrest. See Commonwealth v. Sinforoso, 434 Mass. 320, 325, 749 N.E.2d 128 (2001). The use of handcuffs is not dispositive on the question whether and when a stop has been transformed into an arrest. See Commonwealth v. Dyette, 87 Mass. App. Ct. 548, 556-557, 32 N.E.3d 906 (2015). Indeed, at that point in time the police had reasonable suspicion, but not yet probable cause, to believe a crime had been committed. Moreover, concern for officer safety also permits the defendant to be handcuffed. See Commonwealth v. Williams, 422 Mass. 111, 117-118, 661 N.E.2d 617 (1996).
c. Search of the center console. Police may conduct a protective sweep of the interior of a motor vehicle for a weapon so long as the search is limited to areas from where the defendant could access a weapon. See Commonwealth v. Manha, 479 Mass. 44, 49, 91 N.E.3d 669 (2018). Allowing the defendant to return to the pickup truck without a search for weapons, where a weapon could be within reach of the defendant, poses an obvious concern for officer safety. See Commonwealth v. Edwards, 476 Mass. 341, 348-349, 67 N.E.3d 1224 (2017) ("Although the defendant was not in the vehicle at the time the gun was observed, ... there was no assurance that he would not be returning promptly to his seat behind the wheel of the automobile"). The defendant's refusal to open the console and his placing his hand over the compartment in a way that prevented access to it justified the search. The motion was properly denied.
3. Defenses. The defendant next argues that it was error for the trial judge to prevent him from presenting evidence of a third-party culprit and that the police investigation was inadequate. We disagree.
a. Third-party culprit. A defendant is given wide latitude to present evidence that someone other than himself committed the crime; however, that latitude is not boundless. See Commonwealth v. Silva-Santiago, 453 Mass. 782, 800-801, 906 N.E.2d 299 (2009) ; Mass. G. Evid. § 1105 (2018). A judge is permitted broad discretion in deciding whether to exclude third-party culprit evidence. See Silva-Santiago, 453 Mass. at 801, 906 N.E.2d 299.
On the morning of trial, the defendant indicated his intention to call his prior attorney, Peter Slepchuk, as a witness. During a voir dire, Slepchuk testified that he represented the defendant at arraignment, *745 and that during the bail review, he argued that the firearm belonged to the owner of the pickup truck, Medina. He testified that he had learned that Medina had prior firearm convictions and used this information to support his argument. Slepchuk further testified that approximately one week later, as he was entering the court house for the defendant's bail review hearing, a man who identified himself as Medina approached him. This person told Slepchuk that he was aware of Slepchuk's bail argument. He ordered Slepchuk not to implicate Medina or use his name again. Slepchuk testified that this man told him that the defendant needed to take responsibility; the man then followed him into the court room for the bail review hearing. At sidebar, Slepchuk notified the bail judge *514 and the prosecutor of what occurred; he eventually reported it to the State police. Thereafter, Slepchuk filed a motion to withdraw on the basis that he had become a potential witness. The motion was allowed.
The Commonwealth objected to Slepchuk's proposed testimony, contending that it was largely hearsay and not relevant to the crimes charged. The defendant claimed it was both relevant and necessary for a Bowden defense. See Commonwealth v. Bowden, 379 Mass. 472, 485-486, 399 N.E.2d 482 (1980) ; Mass. G. Evid. § 1107 (2018). The proffered testimony, however, would require the jury to speculate on collateral issues. See Commonwealth v. Phinney, 446 Mass. 155, 163, 843 N.E.2d 1024 (2006). Specifically, the jury would have to surmise that the person who approached Slepchuk was in fact Medina, that the firearm belonged to Medina, and that Medina wanted the defendant to take responsibility for the firearm. In considering the proposed evidence, the trial judge properly excluded Slepchuk's testimony, as some of the proposed testimony was hearsay and the balance was not relevant to whether the defendant possessed the firearm at the time it was recovered. See Commonwealth v. Rosario, 444 Mass. 550, 556-557, 829 N.E.2d 1135 (2005) (judge permitted to exclude third-party culprit evidence on relevancy grounds). This ruling did not, however, foreclose the defendant from pursing a third-party culprit defense. The defendant was permitted to testify that he was not the owner of the pickup truck, this was the first time he had borrowed it, he had no knowledge of the items in the pickup truck, and the firearm did not belong to him. There was no error.
Next, the defendant argues that it was error to exclude Medina's prior criminal record. Third-party culprit evidence that is hearsay and does not fall within an exception is admissible if, "in *746 the judge's discretion, the evidence is otherwise relevant, will not tend to prejudice or confuse the jury, and there are other substantial connecting links to the crime." Silva-Santiago, 453 Mass. at 801, 906 N.E.2d 299 (quotation omitted). For the same reasons detailed in the discussion concerning Slepchuk's proffered testimony, there was no error in excluding these records.[6]
For the first time on appeal, the defendant argues that the excluded evidence was indicative of Medina's consciousness of guilt. As this was not raised in the trial court, we consider whether the ruling, if error, gave rise to a substantial risk of a miscarriage of justice. See Commonwealth v. Vuthy Seng, 436 Mass. 537, 550, 766 N.E.2d 492, cert. denied, 537 U.S. 942, 123 S.Ct. 342, 154 L.Ed.2d 249 (2002). We conclude that it does not for substantially the same reasons that Slepchuk's testimony was properly excluded. This evidence would require the jury to speculate that the person who approached Slepchuk was in fact Medina, and that the gun belonged to him. See Rosario, 444 Mass. at 557, 829 N.E.2d 1135. There was no error, let alone a substantial risk of a miscarriage of justice.
b. Failure to investigate. Based on the voir dire testimony of Slepchuk, the defendant sought to advance a defense that the police investigation was inadequate. See Bowden, 379 Mass. at 485-486, 399 N.E.2d 482. The defendant's claim that he was denied the ability to present a failure to investigate defense is belied by the record. He was permitted to question Stone about his conversation with Medina *515 when he arrived at the scene of the stop.[7] Stone was also questioned about the lack of fingerprint evidence and deoxyribonucleic acid testing. As a result of this line of questioning, the judge gave the jury a Bowden instruction. There was no error.
4. Sufficiency of the evidence. In his opening brief, the defendant raised three categories of purported errors: (1) the denial of his motion to suppress, (2) rulings on certain aspects of his defenses, and (3) the sufficiency of the evidence of the conviction on the charge of carrying a loaded firearm. In its brief, the Commonwealth noted that the defendant did not raise the sufficiency of the evidence of the convictions on the charges of carrying a firearm without a license and possession of ammunition and asserted that these issues are waived. See Mass.R.A.P. 16(a)(4), as amended, *747 367 Mass. 921 (1975). In the defendant's reply brief, he addressed the Commonwealth's response to the three claims he had raised in his opening brief with specific reference to pages in the Commonwealth's brief. Like his opening brief, the defendant's reply brief was silent on the sufficiency of the evidence on the charges of carrying a firearm without a license and possession of ammunition without a firearm identification card. Thereafter, the defendant filed a motion for leave to file a supplemental brief, a supporting affidavit, and the proposed supplemental brief. There, for the first time, the defendant challenged the sufficiency of the evidence to support the conviction of possession of ammunition. He further argued that this conviction is duplicative of the conviction of possession of a loaded firearm. Defense counsel's supporting affidavit stated that he became aware that he had omitted these two issues after reviewing the Commonwealth's brief, and that he had no strategic reason for doing so. The Commonwealth filed an opposition arguing that the issues were waived, and pointing out that both the defendant's opening brief and his reply brief failed to address these issues.
Rule 16(c) of the Massachusetts Rules of Appellate Procedure, as amended, 399 Mass. 1217 (1987), upon which the defendant relies in support of his motion for leave to file a supplemental brief, provides in pertinent part that an "appellant may file a brief in reply to the brief of the appellee." The defendant did so and made substantive arguments in response to the Commonwealth's brief. Although the Commonwealth highlighted the issue of waiver in its brief, the defendant's reply brief failed to address it. To allow the defendant to file a supplemental brief on an issue that is not new, and does not address a change in the law, would eviscerate the doctrine of waiver. Accordingly, the defendant's motion for leave to file a supplemental brief is denied. However, we address *516 the question of sufficiency of the evidence for purposes of assessing whether there has been a substantial risk of a miscarriage of justice. See Commonwealth v. Powell, 459 Mass. 572, 579, 946 N.E.2d 114 (2011), cert. denied, 565 U.S. 1262, 132 S.Ct. 1739, 182 L.Ed.2d 534 (2012), quoting from Commonwealth v. Grandison, 433 Mass. 135, 140 n.8, 741 N.E.2d 25 (2001). (although raised for first time on appeal, we consider claim "because 'findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice' ").
Here, we have the rare case that presents both a procedural defect and a sufficiency issue that compels reversal on the question *748 of sufficiency of the evidence[8] of the conviction of possession of ammunition without a firearm identification card. In addition, the defendant contends that the evidence was insufficient to prove that he knew the firearm was loaded and therefore the conviction of possession of a loaded firearm must be reversed.
"To convict the defendant of unlawful possession of a loaded firearm, the Commonwealth [is] required to prove that the defendant knowingly possessed a firearm that was loaded with ammunition and met the legal requirements of a firearm ...." Commonwealth v. Johnson, 461 Mass. 44, 52, 958 N.E.2d 25 (2011). In a recent decision, the Supreme Judicial Court held that "to sustain a conviction [of possession of a loaded firearm], the Commonwealth must prove that a defendant knew the firearm he possessed was loaded." Commonwealth v. Brown, 479 Mass. 600, 601, 97 N.E.3d 349 (2018).[9] Here, as in Brown, the ammunition in the firearm was the only evidence presented that the firearm was loaded. It therefore follows that because "the defendant 'could not have discerned whether the gun was loaded merely by looking at it,' and the Commonwealth presented no evidence that the defendant knew it was loaded," the evidence was insufficient. Id. at 605, 97 N.E.3d 349, quoting from Commonwealth v. Brown, 91 Mass. App. Ct. 286, 293, 74 N.E.3d 293 (2017).
Possession of ammunition without a firearm identification card is a lesser included offense of unlawful possession of a loaded firearm. See Johnson, 461 Mass. at 54, 958 N.E.2d 25. And, because the only ammunition in this case was found within the firearm itself, this conviction too cannot stand.[10]
5. Conclusion. The conviction of possession of a firearm without a license is affirmed. The convictions of possession of a loaded firearm without a license and possession of ammunition *749 without a firearm identification card are set aside, and judgments shall enter for the defendant on those charges.
So ordered.

The defendant was found guilty on charges of carrying a firearm without a license, possession of ammunition without a firearm identification card, and carrying a loaded firearm without a license. The Commonwealth filed a nolle prosequi on a charge of improper storage of a firearm. Three motor vehicle violations were filed with the defendant's consent.

Testing by the State police firearms identification section confirmed that the recovered weapon was an operable firearm.

A search of the pickup truck incident to arrest was conducted; no further evidence was discovered.

We consider only the evidence presented at the motion to suppress hearing here, but consider the trial evidence on the remaining issues.

No contraband was found on the defendant's person.

The defendant's assumption that the trial judge was unaware that hearsay may be permitted for purposes of a third-party culprit defense is not supported by the record.

While the jury were not so instructed, more than one person may possess an object. See Commonwealth v. Rivera, 31 Mass. App. Ct. 554, 556, 581 N.E.2d 498 (1991).

We review the evidence in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677, 393 N.E.2d 370 (1979). We have considered the arguments raised by the Commonwealth in its brief on the question of sufficiency of the evidence.

Although both parties acknowledged in their briefs that the Brown case was pending, neither submitted a letter pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), after that case issued. This would have been the better practice.

To convict the defendant of unlawful possession of ammunition, the Commonwealth was required to prove that the defendant knowingly possessed ammunition that met the legal definition of ammunition. See G. L. c. 269, § 10(h ).