NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-133

COMMONWEALTH

vs.

ROBERT BRUTON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a District Court judge (motion judge) denied the defendant's motion to suppress a firearm, the defendant, Robert Bruton, conditionally pleaded guilty to carrying a firearm without a license, G. L. c. 269, § 10 (a), and carrying a loaded firearm without a license, G. L. c. 269, § 10 (n). The defendant now appeals from the order denying the motion to suppress, arguing that the police lacked reasonable suspicion to search the coat he was sitting on in the back seat of a car. Accepting the motion judge's findings -- including that the police saw the defendant reaching behind himself and tucking his hands under his thighs -- we conclude there were sufficient

specific, articulable facts to establish reasonable suspicion, and thus we affirm.

Background.  We summarize the facts found by the motion judge, supplemented by uncontroverted testimony that the judge implicitly or explicitly credited.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 436-437 (2015).

At about 11:30 A.M. on April 3, 2022, Fall River police Officer Eric Bettencourt was on patrol with his partner, Officer Joseph Boyajian, when they saw a gray Honda Civic with a New York license plate fail to stop at a stop sign.  The officers stopped the Honda.  Officer Bettencourt approached the driver's side of the Honda.

Three men were inside the Honda; the defendant sat in the back seat on the driver's side.  Officer Bettencourt recognized the driver:  a few days previously, at a pizza parlor about a block away from the stop, police had seized a firearm from a companion of the driver.  Officer Bettencourt also recognized the front seat passenger from the neighborhood, but did not know his name.  Unlike the other two occupants of the Honda, the defendant was unknown to the officers.

Officer Bettencourt asked the driver for his license and registration.  The driver provided his license, but said he did not know where the Honda's registration was.  At about this time, Officer Michael Sullivan arrived and went to the

2

passenger's side of the Honda, and Officer Boyajian stood at its rear. Immediately after producing his license, the driver placed his hand over his waistband. Officer Bettencourt, based on his experience that firearms and other weapons are commonly carried in a person's waistband area, ordered the driver out of the Honda. Asked if he had any weapons, the driver said no.

From his vantage point on the passenger's side, Officer Sullivan noticed that the front seat passenger was "frozen there, looking straight ahead." As soon as the driver got out of the Honda, the defendant began "moving around and tucking his hands under his legs." The defendant "leaned forward slightly," "took his left hand behind him," "started to dig" behind himself, and "had his right hand . . . tucking downward toward[] . . . his right hip area."[1]

Meanwhile, Officer Bettencourt pat frisked the driver, found a knife in the front pocket of his hoodie, and placed it on the roof of the cruiser. Officer Bettencourt started to escort the driver away from the Honda.

---

[1] Officer Sullivan also testified that he saw "a black object." Though the motion judge credited Officer Sullivan's testimony generally, he did not specifically find whether he credited that observation, and there was no evidence that Officer Sullivan communicated it to Officer Bettencourt. That testimony is unnecessary to our analysis.

Just then, Officer Sullivan said, "He's moving."  Officer Bettencourt saw that the defendant "had both of his hands stuffed . . . underneath him, underneath his legs."  At that point, Officer Bettencourt became "scared . . . because [he] didn't know if there were any other weapons in the vehicle."  Officer Bettencourt immediately ordered the defendant out of the Honda, pat frisked him, and found nothing.  On the back seat where the defendant had been sitting was a black winter coat.  The coat had been "[d]irectly underneath" the defendant's legs, where he had been stuffing his hands.  Officer Bettencourt picked up the coat, noticed that it was unusually heavy, and reached into its pocket and found a silver firearm with a sock over its handle.

The defendant moved to suppress the firearm, arguing that the police did not have grounds either to order the defendant out of the vehicle or to search the defendant or the coat.  After a hearing at which Officer Bettencourt and Officer Sullivan testified, the motion judge denied the motion in a memorandum of decision, crediting both officers' testimony and concluding that their actions were justified.  The defendant filed a motion to reconsider, which the motion judge denied.

The defendant entered a conditional guilty plea to carrying a firearm without a license, G. L. c. 269, § 10 (a), and carrying a loaded firearm without a license, G. L. c. 269,

4

§ 10 (n), while reserving his right to appeal from the denial of his motion to suppress.[2]  See Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019).  This appeal followed.

Discussion.  The defendant argues that the firearm should have been suppressed because the officers lacked reasonable suspicion to pat frisk the coat.[3]

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law" (quotation and citation omitted).  Commonwealth v. Silvelo, 486 Mass. 13, 15 (2020).  "In the context of a lawful motor vehicle stop, [a] patfrisk is permissible only where an officer has reasonable suspicion that the stopped individual may be armed and dangerous" (quotation and citation omitted).  Commonwealth v. Crowder, 495 Mass. 552, 566 (2025), petition for cert. filed, U.S. Supreme Ct., No. 24-7498 (June 21, 2025).  "To determine whether an officer indeed had the requisite reasonable suspicion to engage in a patfrisk, we ask whether a reasonably prudent [person] in the [officer's]

_____

[2] The Commonwealth entered a nolle prosequi on one count charging the defendant with possession of a large capacity firearm, G. L. c. 269, § 10 (m).

[3] On appeal, the defendant does not challenge the stop, the exit order, or the patfrisk of his person.

5

position would be warranted in the belief that the safety of the police or that of other persons was in danger" (quotation and citation omitted). Id. That reasonable suspicion "must be based on specific, articulable facts and inferences reasonably drawn therefrom." Id.

In arguing that Officer Bettencourt did not have reasonable suspicion to pat frisk the coat, the defendant analyzes separately what the police knew about the driver and their observations of the defendant's conduct. "The defendant parses the facts to suggest that, viewed independently," each of those categories of facts was not enough for reasonable suspicion. Commonwealth v. Galarza, 93 Mass. App. Ct. 740, 743 (2018). "However, these facts must be viewed in the totality of the circumstances." Id. Though "no one factor standing alone would have provided justification for . . . the patfrisk," "a combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable [suspicion]" (quotation and citation omitted). Commonwealth v. Johnson-Rivera, 104 Mass. App. Ct. 533, 539 (2024).

As to the driver, Officer Bettencourt knew that he had recently been in the presence of a companion from whom police seized a firearm; during the stop, he placed a hand on his waistband, where weapons are often secreted; and, when asked if he had a weapon, said no, failing to disclose the presence of

6

the knife in the pocket near his hand.  We are unpersuaded by the defendant's argument that Officer Bettencourt's discovery of the knife on the driver "added nothing" to reasonable suspicion because there was no evidence that the knife was illegal to possess.[4]  To be sure, the facts known to police about the driver, including the discovery of the knife, would not by themselves have sufficed to justify the patfrisk of the coat on which the defendant was sitting.  "[T]he basis for the frisk must be particular to the individual" (citation omitted).  Commonwealth v. Brown, 75 Mass. App. Ct. 528, 536 (2009).  But we do not read the motion judge's decision as hinging on the discovery of the driver's knife.

Instead, the significance of the police discovery of the driver's knife was that it gave the officers justification to extend the stop.[5]  The defendant has not argued, in the trial court or before us, that the police unreasonably prolonged the motor vehicle stop "in the hope that, sooner or later, the stop might yield up some evidence of an arrestable crime."

---

[4] We do not reach the question whether the driver's knife was illegal to possess.  Cf. Commonwealth v. Canjura, 494 Mass. 508, 516 (2024) (holding unconstitutional G. L. c. 269, § 10 (b), which banned possession of switchblades).

[5] The record is unclear as to the duration of the stop, but Officer Sullivan testified that the stop "wasn't very long" and the events were "relatively continuous."

7

Commonwealth v. Soriano-Lara, 99 Mass. App. Ct. 525, 530 (2021), quoting Commonwealth v. Gonsalves, 429 Mass. 658, 663 (1999). The driver's conduct and the police discovery of the knife were specific facts giving the officers reason to suspect that "further criminal conduct is afoot" beyond a traffic violation (citation omitted). Commonwealth v. Tavares, 482 Mass. 694, 703 (2019). Thus, the officers had reason to continue the investigatory stop rather than allow the driver to return to the Honda and drive away.

As for the defendant's own conduct, he argues that the officers' observations of his movements did not justify the search of the coat. Shortly after the defendant heard Officer Bettencourt ask if the driver had a weapon and then saw him pat frisk the driver, police noticed the defendant tucking his hands under his thighs.[6] The motion judge found that "[t]he [d]efendant's movements . . . caused Officer Bettencourt to be fearful that other weapons were present in the vehicle." We defer to that factual finding. See Commonwealth v. Garner, 490

---

[6] At oral argument, the defendant argued that Officer Bettencourt's testimony on cross-examination was "confusing and vague" because he said, "I saw [the defendant's] hands where I couldn't see his hands." We defer to the judge's credibility determination that the officers saw the defendant "tucking his hands under his legs." See Commonwealth v. Druce, 453 Mass. 686, 699 (2009) (accepting motion judge's resolution of conflicting testimony).

8

Mass. 90, 94 (2022) ("Because the [motion] judge observes the witnesses as they testify, appellate courts rely upon his . . . determination of the credibility of each witness, as well as the amount of weight to give the testimony").

We conclude that in these circumstances, the police had a reasonable suspicion that the defendant was concealing a weapon. See Commonwealth v. Stampley, 437 Mass. 323, 327 (2002) (movements "suggestive of occupant's retrieving or concealing an object," such as a firearm, "raise legitimate safety concerns to an officer conducting a traffic stop"). See also Commonwealth v. Goewey, 452 Mass. 399, 406 (2008) (defendant "reaching into the area around him" in car where his hands could not be seen was one fact justifying patfrisk); Commonwealth v. DePeiza, 449 Mass. 367, 374-375 (2007) (defendant "reaching" into pants pocket raised officers' suspicions that he was carrying illegal firearm). Contrast Commonwealth v. Torres-Pagan, 484 Mass. 34, 40-41 (2020) (no reasonable suspicion where defendant turned to look into front seat but made no furtive movements and kept hands in view).

After Officer Bettencourt pat frisked the defendant's person but did not find anything, he permissibly picked up the black coat, noticed that it was heavy, and checked its pocket. "Police may conduct a protective sweep of the interior of a motor vehicle for a weapon so long as the search is limited to

9

areas from where the defendant could access a weapon." Galarza, 93 Mass. App. Ct. at 744.  Given that the defendant had just been stuffing his hands into the area where the coat was, Officer Bettencourt was justified in searching the coat for weapons.  See Commonwealth v. Monell, 99 Mass. App. Ct. 487, 490-492 (2021) (after defendant was removed from car and no weapon was discovered on his person, police "were justified in their concern that a weapon might remain in the car").

At oral argument, the Commonwealth acknowledged that this case is "close."  We conclude that, based on the motion judge's findings of fact, none of which were clearly erroneous, in the totality of the circumstances, Officer Bettencourt "could reasonably suspect that the defendant was armed and dangerous." Johnson-Rivera, 104 Mass. App. Ct. at 539-540.

> Order denying motion to
> suppress affirmed.
>
> By the Court (Vuono, Grant &
> Walsh, JJ.[7]),
>
> _Paul Little_
> Clerk

Entered:  July 31, 2025.

---

[7] The panelists are listed in order of seniority.

10