NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12348


COMMONWEALTH  vs.  TYRIEK BROWN.



Worcester.    January 5, 2018. - May 22, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, & Budd, JJ.


Firearms.  Evidence, Firearm.  Practice, Criminal, Argument by
    prosecutor.  Words, "Knowingly."



Indictments found and returned in the Superior Court
Department on December 13, 2013.

The cases were tried before William F. Sullivan, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Deborah Bates Riordan (Theodore F. Riordan also present)
for the defendant.
Michelle R. King, Assistant District Attorney, for the
Commonwealth.
David Rangaviz, Committee for Public Counsel Services, for
Erickson Resende, amicus curiae, submitted a brief.


GAZIANO, J.  The primary issue presented in this appeal is

whether the Commonwealth is required to prove a defendant knows

that a firearm in his or her possession is loaded in order to be

convicted of unlawful possession of a loaded firearm under G. L. c. 269, § 10 (n).

After police officers discovered a loaded firearm in the rear console of a vehicle driven by the defendant, he was charged with and convicted of unlawful possession of a firearm, G. L. c. 269, § 10 (a), and unlawful possession of a loaded firearm, G. L. c. 269, § 10 (n).[1]  The defendant appealed from his convictions, and the Appeals Court vacated the conviction of possession of a loaded firearm, after it concluded that G. L. c. 269, § 10 (n), requires the Commonwealth to prove a defendant's knowledge that the firearm was loaded.  See Commonwealth v. Brown, 91 Mass. App. Ct. 286, 287, 293 (2017).  Because the defendant "could not have discerned whether the gun was loaded merely by looking at it," and the Commonwealth presented no evidence that the defendant had knowledge that the gun was loaded, the Appeals Court decided that there was "no basis on which a rational juror could conclude beyond a reasonable doubt that the defendant knew the gun was loaded."  Id. at 293.  The Appeals Court affirmed the conviction of possession of a firearm without a license, concluding that the

_____

[1] Before trial, a separate charge of possession of ammunition without a firearms identification card was dismissed at the request of the Commonwealth.  The defendant was acquitted of possession of a firearm with a defaced serial number, and pleaded guilty to operation of a motor vehicle without a valid license.

prosecutor's closing argument was not improper and that, even if it was, it did not result in a substantial risk of a miscarriage of justice. Id. at 294. We allowed both parties' applications for further appellate review.

In its brief to this court, the Commonwealth contends that G. L. c. 269, § 10 (n), is merely a sentencing enhancement for the underlying offense of unlawful possession of a firearm, G. L. c. 269, § 10 (a). In this view, an additional element of knowledge that a firearm contains ammunition is not required to prove a violation of G. L. c. 269, § 10 (n). All that is required is knowledge of possession of a firearm. The defendant challenges the sufficiency of the evidence to support a conviction of possession of a loaded firearm and the Appeals Court's determination that the prosecutor's closing argument did not create a substantial risk of a miscarriage of justice.

We conclude that, to sustain a conviction under G. L. c. 269, § 10 (n), the Commonwealth must prove that a defendant knew the firearm he or she possessed was loaded. Because the Commonwealth presented no evidence in this case that could allow any rational trier of fact to find beyond a reasonable doubt that the defendant knew the firearm was loaded, the conviction of possession of a loaded firearm without a license cannot stand. Further, because we conclude that the Commonwealth's closing argument did not create a substantial risk of a

miscarriage of justice, we affirm the conviction of possession of a firearm without a license, in violation of G. L. c. 269, § 10 (a).[2]

1. Background. As the defendant challenges the sufficiency of the evidence of his knowledge that the firearm was loaded, we recite the evidence in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

On the morning of July 4, 2013, State police Trooper Matthew Moran stopped a vehicle the defendant was driving on Interstate Route 290 in Worcester for a defective rear brake light. There were two passengers in the vehicle: a male passenger, Horace Murphy, in the front passenger seat; and a female passenger, Joelene Cataquet, in the back seat. Cataquet was asleep when the vehicle was stopped. The defendant said that he was returning from his former girl friend's house in Worcester and was headed back to Boston. He gave the trooper a Massachusetts identification card and a Massachusetts learner's permit. Murphy produced a Georgia driver's license. Moran determined through registry of motor vehicles records that both licenses were suspended in Massachusetts.

---

[2] We acknowledge the amicus brief submitted by Erickson Resende.

After a second trooper, Patrick Mahady, arrived in response to Moran's request for backup, the defendant was arrested for driving with a suspended license and was placed in Mahady's cruiser. Moran then read the defendant the Miranda rights, and the defendant indicated that he understood those rights. At that point, Moran determined that, because Cataquet did not have a driver's license, the vehicle would have to be towed from the highway, as none of the occupants legally could drive it. In preparation for towing, Moran conducted an inventory search of the vehicle while the defendant was in Mahady's cruiser and the two passengers waited behind the vehicle near the guardrail. Moran discovered a handgun loaded with five rounds of ammunition in the console between the rear passenger seats. After this discovery, Mahady arrested both passengers.

On the drive to the State police barracks, the defendant initiated a conversation with Mahady, saying that he thought Murphy had a license to carry a firearm. The defendant also said that he had gone to his former girl friend's house in Worcester that morning to pick up some clothing. While he was there, the girl friend's sister began arguing with an unknown male and waving a firearm around. The defendant said that he grabbed the gun from the woman and left the house. When he returned to the vehicle, where Murphy and Cataquet were waiting, he handed the gun to Cataquet and said that they would get rid

of the gun later. Upon their arrival at the barracks, Mahady was called to another incident and left the defendant with Moran without mentioning the conversation. When Moran again advised the defendant of his Miranda rights, the defendant declined to speak with officers. At trial, Mahady testified to the substance of the conversation in the cruiser.

During booking, Cataquet gave a written statement, a redacted version of which was read in evidence by Mahady.[3] As Mahady read it, the statement said,

> "It is my firearm. I claim full responsibility for the firearm. I took it out of my purse and slid it into the rear console because it made my purse heavy . . . .
>
> "I took a nap while we were riding on the highway, and the two men in front, [the defendant] and [Murphy], did not know at all that I was carrying a fully loaded clip firearm in the vehicle. And when I woke up out of my nap, both the men were in handcuffs. The officer asked me if it was mine. I said no, but I was scared. But most importantly, I can't let two men lose their freedom because I . . . had the firearm on the ride to the station. I realized that, and that's why I'm writing this written statement. I take responsibility for my actions. The reasons I have a gun is because I was recently raped and felt the need to have a gun to protect myself. Once again, I take full responsibility."

There were no useable fingerprints on the firearm, the magazine, or the ammunition. A forensic scientist was unable to obtain the serial number for use in tracing the owner of the

---

[3] Cataquet's handwritten statement was introduced as a declaration against penal interest. See Mass. G. Evid. § 804(b)(3) (2018). The written form and its discussion of Miranda warnings were redacted before being given to the jury.

firearm. The defendant was convicted of unlawful possession of a firearm in a vehicle and unlawful possession of a loaded firearm in a vehicle, and acquitted of possession of a firearm with a defaced serial number.[4] The Appeals Court reversed the conviction of possession of a loaded firearm without a license and affirmed the conviction of possession of a firearm (in a vehicle) without a license to carry. We allowed both parties' applications for further appellate review.

2. Discussion. a. Mens rea requirement for G. L. c. 269, § 10 (n). General Laws c. 269, § 10 (a), defines the offense of possession of a firearm, not in an individual's home or business, without a license. The statute is violated, inter alia, when an individual "knowingly has in his possession[,] or knowingly has under his control in a vehicle[,] a firearm, loaded or unloaded, . . . without either . . . being present in or on his residence or place of business . . . or having in effect a license to carry firearms . . . ." See Commonwealth v. Sann Than, 442 Mass. 748, 752 (2004).

General Laws c. 269, § 10 (n), provides a sentencing enhancement to the crime of unlicensed possession of a firearm

---

[4] As mentioned, after trial on the firearms charges, the defendant pleaded guilty to the charge of operating a motor vehicle with a suspended license. He does not appeal from that conviction, and it is not before us.

where an unlicensed firearm was loaded.[5]  It does not create a stand-alone offense; in order to be convicted under G. L. c. 269, § 10 (n), an individual must first have been convicted under G. L. c. 269, § 10 (a) or (c).  Commonwealth v. Loadholt, 456 Mass. 411, 423-424 (2010), S.C., 460 Mass. 723 (2011).  See Commonwealth v. Dancy, 90 Mass. App. Ct. 703, 705 (2016) ("We interpret the plain language of this section to require a finding that § 10[a] or § 10[c] has been violated before the penalty enhancement provision in § 10[n] can apply").

At the close of all the evidence in this case, the judge indicated that he would give the jury instruction for the charge of unlawful possession of a loaded firearm proposed by defense counsel.  Under the wording of that instruction, the Commonwealth was required to prove that (1) the defendant possessed or had control over a firearm; (2) the weapon met the legal definition of a firearm; (3) the defendant knew that he possessed a firearm; and (4) ammunition was contained in the weapon or within the feeding device attached to the weapon.  The

---

[5] General Laws c. 269, § 10 (n), provides, in its entirety:

"Whoever violates paragraph (a) or paragraph (c), by means of a loaded firearm, loaded sawed off shotgun or loaded machine gun shall be further punished by imprisonment in the house of correction for not more than [two and one-half] years, which sentence shall begin from and after the expiration of the sentence for the violation of paragraph (a) or paragraph (c)."

judge ultimately gave an instruction that combined language requested by the defendant and by the Commonwealth, and which mistakenly stated that five elements were required, while including only the four elements listed above.  During deliberations, the jury sent the judge the following question: "[O]ur instruction[] says there must be five elements, and we were only provided with four.  Does the defendant have to know whether the firearm was loaded, or just that he possessed it and it was loaded?"  The judge conferred with each attorney and ultimately decided, with the agreement of both attorneys, to explain that the word "five" had been a misprint and should have been "four," and then to read the version of the instruction that the defendant had requested as to the required elements of the offense.

In his appeal to the Appeals Court, the defendant challenged the sufficiency of the evidence to sustain the conviction under G. L. c. 269, § 10 (n), arguing that the Commonwealth was required to prove that he knew the firearm was loaded.  Relying on our prior case law that unlawful possession of ammunition, G. L. c. 269, § 10 (h), is a lesser included offense of unlawful possession of a loaded firearm, and requires the Commonwealth to prove that a defendant knowingly possessed ammunition, the Appeals Court concluded that it was bound by the reasoning of Commonwealth v. Johnson, 461 Mass. 44, 52-53

(2011), and adopted the defendant's argument. See Brown, 91 Mass. App. Ct. at 291-293; Johnson, supra at 53 (conviction of possession of unlicensed firearm requires knowledge that object possessed met definition of firearm, and possession of ammunition without firearms identification card requires knowledge that ammunition possessed met legal definition of ammunition; because "[a]ll of the required elements of unlawful possession of ammunition were encompassed by the elements of unlawful possession of a loaded firearm, . . . the former crime was a lesser included offense of the latter crime"). As the evidence here showed that the defendant "could not have discerned whether the gun was loaded merely by looking at it," and the Commonwealth presented no evidence that the defendant knew it was loaded, the Appeals Court concluded that there was "no basis on which a rational juror could conclude beyond a reasonable doubt that the defendant knew the gun was loaded" and set aside the verdict on that charge. See Brown, supra at 293.

The Commonwealth argues that G. L. c. 269, § 10 (n), is merely a sentencing enhancement for which a separate element of mens rea is not required beyond that necessary to prove the underlying offense, G. L. c. 269, § 10 (a). See Commonwealth v. Rodriguez, 415 Mass. 447, 452-453 (1993) (in convicting defendant of trafficking instead of possession, Commonwealth need prove only quantity of drugs, not defendant's knowledge of

quantity); Commonwealth v. Alvarez, 413 Mass. 224, 228-230 (1992) (statute providing sentencing enhancement for drug-dealing offense committed within 1,000 feet of school does not violate due process). The Commonwealth suggests that G. L. c. 269, § 10 (n), "is not totally void of any mens rea requirement," Alvarez, supra at 229, in that the Commonwealth must prove the intent of the underlying possessory offense. Because some provisions of the firearms statute explicitly include a mens rea requirement ("knowingly"), the Commonwealth maintains, the omission of any explicit language requiring knowledge in the words of G. L. c. 269, § 10 (n), must indicate that the Legislature intentionally omitted a knowledge requirement for enhanced sentencing under G. L. c. 269, § 10 (n).

"Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" Sheehan v. Weaver, 467 Mass. 734, 737 (2014), quoting Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010). "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent." Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008). That said, "[w]e will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable." Attorney Gen. v. School Comm. of Essex, 387

Mass. 326, 336 (1982).  See Black's Law Dictionary 11-12 (10th ed. 2014) (defining "absurdity" as "being grossly unreasonable" and "[a]n interpretation that would lead to an unconscionable result, esp. one that . . . the drafters could not have intended").  We therefore interpret statutes "so as to render the legislation effective, consonant with sound reason and common sense."  Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).

The absence of any explicit language requiring knowledge in the enhancement provision of G. L. c. 269, § 10 (n), is not dispositive.  We previously have concluded that other provisions of the firearms statute that do not explicitly contain a mens rea requirement, among them G. L. c. 269, § 10 (c) and (h), and previous versions of G. L. c. 269, § 10, implicitly require knowledge.  See Johnson, 461 Mass. at 53; Commonwealth v. O'Connell, 432 Mass. 657, 663 (2000) (requiring knowledge of possession, but not knowledge of barrel length, to be convicted of possession of sawed-off shotgun with barrel less than statutory minimum, G. L. c. 269, § 10 [c]); Commonwealth v. Jackson, 369 Mass. 904, 916 (1976) (concluding that implicit knowledge requirement existed in previous version of G. L. c. 269, § 10 [a]); Commonwealth v. Boone, 356 Mass. 85, 87 (1969) (concluding that knowledge requirement was implicit in former G. L. c. 269, § 10, predecessor to current G. L. c. 269,

§ 10 [a]).  With respect to G. L. c. 269, § 10 (a), the Legislature ultimately revised the statutory language to include the element of "knowing" after our decision in Jackson, supra; it has not modified other provisions such as G. L. c. 269, § 10 (c) or (h).

We agree with the Appeals Court's analysis of our reasoning in Johnson, 461 Mass. at 53, concerning lesser included firearms offenses, and its implications in this case.  "Under our long-standing rule derived from Morey v. Commonwealth, 108 Mass. 433, 434 (1871), a lesser included offense is one whose elements are a subset of the elements of the charged offense. . . .  Thus, a lesser included offense is one which is necessarily accomplished on commission of the greater crime" (citation and quotations omitted).  Commonwealth v. Porro, 458 Mass. 526, 531 (2010).[6]  We

---

[6] In Commonwealth v. Porro, 458 Mass. 526, 532 (2010), we noted that there are "rare circumstances where the purposes of our lesser included offense jurisprudence are not served by a strict application of the doctrine in a particular case."  This is not such a case.  "In general, the cases where we have diverged from a strict application of the . . . rule have involved instances where, although each offense contains an element that the other does not, the different element in the lesser included offense is routinely undisputed and was not in dispute in the particular case."  Id.  See Commonwealth v. Walker, 426 Mass. 301, 304-305 (1997) (no dispute as to age of victims in convicting defendant of lesser included offense of indecent assault and battery on child under fourteen years of age); Costarelli v. Commonwealth, 374 Mass. 677, 683-684 (1978) (unauthorized use of motor vehicle is lesser included offense of larceny of motor vehicle where "use on a public way" is not

repeatedly have reaffirmed our holding in Johnson, 461 Mass. at 52-53, that unlawful possession of ammunition is a lesser included offense of unlawful possession of a loaded firearm where the only ammunition at issue is contained in the firearm. See Commonwealth v. Rivas, 466 Mass. 184, 188-189 (2013); Commonwealth v. Charles, 463 Mass. 1008, 1008 (2012), cert. denied, 568 U.S. 1238 (2013); Commonwealth v. Jefferson, 461 Mass. 821, 828 n.7 (2012); Commonwealth v. Anderson, 461 Mass. 616, 632 n.17, cert. denied, 568 U.S. 946 (2012). Each element of the charge of unlawful possession of ammunition, therefore, must be an element of unlawful possession of a loaded firearm. Because the Commonwealth is required to prove that a defendant knowingly possesses ammunition that meets the legal definition of ammunition, see Johnson, supra, we conclude that the Commonwealth also must prove the element of knowing that the firearm was loaded with ammunition in order to convict a defendant of unlawful possession of a loaded firearm under G. L. c. 269, § 10 (n).

b. Evidence of defendant's knowledge. In reviewing a claim of insufficient evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

often contested in practice). By contrast, knowledge whether the firearm was loaded was and is disputed here.

of the crime beyond a reasonable doubt" (emphasis in original).
Latimore, 378 Mass. at 677, quoting Jackson v. Virginia, 443
U.S. 307, 319 (1979).  Here, we consider the sufficiency of the
Commonwealth's evidence as to the defendant's knowledge whether
the firearm he possessed was loaded.

We have observed that, in particular circumstances, a
rational jury could infer that an individual who possessed a
firearm was aware that it was loaded.  See Commonwealth v.
Cassidy, 479 Mass. 527, 537 (2018).  "[K]nowledge can be
inferred from circumstantial evidence, including any external
indications signaling the nature of the weapon."  Staples v.
United States, 511 U.S. 600, 615 n.11 (1994) ("firing a fully
automatic weapon would make the regulated characteristics of the
weapon immediately apparent to its owner").  See Commonwealth v.
Romero, 464 Mass. 648, 653 (2013) ("Proof of possession of
[contraband] may be established by circumstantial evidence, and
the inferences that can be drawn therefrom" [citation omitted]).

In this case, however, it was not possible to discern
merely by observation whether the pistol found in the
defendant's vehicle was loaded; the magazine was inserted inside
the handle and was not visible.  In addition, the Commonwealth
did not present any evidence from which an inference could be
drawn that the defendant was aware that the firearm was loaded.
See Brown, 91 Mass. App. Ct. at 293 & n.13 ("In its brief, the

Commonwealth defended the sufficiency of the evidence based only on its argument that it need not prove that the defendant knew that the gun was loaded.  When pressed on the issue at oral argument, the Commonwealth characterized any proof of such knowledge as 'thin'").

Accordingly, on the facts of this case, no rational trier of fact could have found beyond a reasonable doubt that the defendant knew the firearm was loaded, and the conviction of possession of a loaded firearm without a license cannot stand.

c.  <u>Closing argument</u>.  The defendant also challenges the propriety of certain portions of the prosecutor's closing argument in which he suggested that Cataquet might have been the defendant's "new" girl friend, and that, consequently, she had a motive to fabricate and might have given the statement about the gun in order to protect him.

In his closing argument, the prosecutor argued that this was "a case about confessions."  He urged the jury to credit Mahady's testimony concerning the defendant's statement about the gun, because he had no reason to lie, he did not "look" like he had been lying, and "his testimony makes sense."  By the same token, the prosecutor urged the jury to disbelieve Cataquet's written statement that the gun belonged to her and that the defendant was unaware that it was in the vehicle, as likely motivated by Cataquet's relationship with the defendant.  In

conjunction with that argument, the prosecutor emphasized inconsistencies in Cataquet's statement: Cataquet told police that the firearm had a "fully loaded clip" and that she had removed it from her purse because it was too heavy, yet the magazine was "half full"[7] and no purse was collected from Cataquet at booking. The prosecutor then suggested that the defendant's relationship with his former girl friend must have ended recently, that Cataquet had remained in the vehicle when the defendant went to pick up clothes from his former girl friend's house "to avoid the ex," and that "it is certainly possible that Cataquet was covering for her boyfriend." The prosecutor then ended his closing as he had begun, by saying, "It's that simple: He said it was his gun. And this isn't a case about accusations. It's a case about confessions."

The defendant contends that these suggested inferences were improper and that, as a result, a new trial is required. Because the defendant did not object to these remarks at trial, we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016). "The

---

[7] The testimony of the ballistician was that there had been five bullets in the magazine, and one was fired during ballistics testing, so four new bullets and one spent projectile were introduced in evidence. There was no evidence how much ammunition the magazine held, or how many bullets would have been required in order for it to be "half full," but the evidence did indicate that the magazine was not full.

substantial risk standard requires us to determine 'if we have a serious doubt whether the result of the trial might have been different had the error not been made.'" Id., quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005). The Appeals Court did not determine whether the suggested inferences were reasonable, because it concluded that any error would not have created a substantial risk of a miscarriage of justice. See Brown, 91 Mass. App. Ct. at 294 ("We are confident that the jury's verdict would not have been different had the prosecutor not raised the possibility that the two individuals were dating").

"Prosecutors must limit the scope of their arguments to facts in evidence and inferences that may be reasonably drawn from the evidence." Commonwealth v. Coren, 437 Mass. 723, 730 (2002). Nonetheless, "[t]he inferences . . . need only be reasonable and possible and need not be necessary or inescapable," Commonwealth v. Dinkins, 415 Mass. 715, 725 (1993). "In analyzing a claim of improper argument, the prosecutor's remarks must be viewed in light of the 'entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.'" Commonwealth v. Lamrini, 392 Mass. 427, 432 (1984), quoting Commonwealth v. Bourgeois, 391 Mass. 869, 885 (1984).

The prosecutor did not explicitly present the purported relationship as outright fact, arguing that "it is certainly possible" that the defendant and Cataquet were involved in a relationship, but the prosecutor did rely on this suggested inference. The defendant contends that such an inference was unreasonable where there was no evidence that the two were involved in a romantic relationship, particularly as there was a third passenger in the vehicle and Cataquet was in the back seat.

As the Commonwealth maintains, the suggested inference that the defendant and Cataquet were in a relationship did support a motive for lying, but, given the evidence introduced, the suggestion itself is, at best, a stretch. There was no evidence to indicate that Cataquet and the defendant were involved in a romantic relationship, and we do not adopt the Commonwealth's suggestion that being a rear seat passenger in a vehicle the defendant was driving, with another passenger in the front seat, would suggest as much. The inference that the defendant and Cataquet were involved in a romantic relationship so close that she would lie about having committed a crime in order to protect him went too far.

Nonetheless, the discrepancies in Mahady's and Cataquet's statements were squarely before the jury, as was the lack of evidentiary support for Cataquet's statements. In the

circumstances here, even if the challenged inference of a motive for a "coverup" was not reasonable, we conclude that there was no substantial risk of a miscarriage of justice in the prosecutor's statements. While the remarks should not have been made, the judge properly instructed the jury that closing arguments are not evidence and that they must "confine [their] consideration to the evidence and nothing but the evidence." See Commonwealth v. Resende, 476 Mass. 141, 154-155 (2017). We are confident that the result of the trial would not have been different if the prosecutor had relied solely on the inconsistencies in Cataquet's statement in arguing that she was lying, and had not suggested that she and the defendant were involved in a relationship, or, indeed, had relied solely on Mahady's lack of a motive to lie in the course of his duty. The prosecutor properly urged the jury, several times, to use their "common sense" in considering Cataquet's statement. Whatever her motive for making it, the jury would not have drawn a different conclusion about the reliability of Cataquet's statement that she removed the gun from her purse (not found at the scene or at booking) because it was too heavy, and placed it in the rear seat console. Because it would have made no difference in the result, the challenged statements in the prosecutor's closing argument do not require a new trial.

3.  <u>Conclusion</u>.  The conviction of possession of a firearm without a license is affirmed.  The conviction of possession of a loaded firearm without a license is vacated and set aside, and judgment shall enter for the defendant on that indictment.

<u>So ordered</u>.