NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

19-P-258                                              Appeals Court

COMMONWEALTH vs. DESHAWN W. GRAYSON.

No. 19-P-258.

Suffolk.     October 8, 2019. - December 20, 2019.

Present:  Massing, Sacks, & Hand, JJ.

Firearms.  Evidence, Firearm.  Trespass.  Practice, Criminal,
    Required finding.

Complaint received and sworn to in the Dorchester Division of the Boston Municipal Court Department on July 20, 2018.

The case was tried before Jonathan R. Tynes, J.

James M. Fox for the defendant.
Kathryn Sherman, Assistant District Attorney, for the Commonwealth.

SACKS, J.  Is evidence that the defendant carried a loaded semiautomatic pistol in his waistband sufficient, without more, to prove beyond a reasonable doubt that he knew the pistol was loaded?  Concluding that it is not, we reverse the defendant's conviction, after a jury trial, of carrying a loaded firearm without a license, G. L. c. 269, § 10 (n).  We affirm, as

supported by sufficient evidence, his convictions of carrying a firearm without a license and of trespassing.[1]  See G. L. c. 269, § 10 (a); G. L. c. 266, § 120.

Background.  Viewing the evidence in the light most favorable to the Commonwealth, the jury could have found the following facts.  At about 7 P.M. on a July evening in 2018, Boston Police Detective Ishmael Henriquez and three other detectives were driving through Dorchester, looking for a young man for whom they had an arrest warrant.  The detectives spotted the man on a bicycle, accompanied by another young man, later identified as the defendant, also on a bicycle.  The detectives drove to a spot a few blocks ahead of the men and parked.  As the men approached on their bicycles, Henriquez's partners got

---

[1] At the Commonwealth's request, the jury verdict of guilty on the charge of possessing ammunition without a firearm identification card, G. L. c. 269, § 10 (h) (1), was set aside as duplicative and the charge dismissed.  A charge of resisting arrest, G. L. c. 268, § 32B, was disposed of by the assented-to entry of a required finding of not guilty at the close of the Commonwealth's case.  The defendant received a two-year committed house of correction sentence on the firearm charge; a two and one-half year house of correction sentence, suspended for five years, on the loaded firearm charge; and a thirty-day committed house of correction sentence, deemed served, on the trespassing charge.  For the reasons stated infra, there was insufficient evidence to support the possession of ammunition charge.  See Commonwealth v. Johnson, 461 Mass. 44, 53 (2011) (conviction of unlawful possession of ammunition requires proof that defendant knowingly possessed ammunition).  Thus our reversal of the conviction on the loaded firearm charge does not require us to vacate the dismissal of the ammunition charge.

out of the cruiser and stopped and arrested the man for whom they had a warrant.

In the meantime, the defendant, in Henriquez's words, "attempted to flee" on his bicycle, steering with one hand while clutching his waistband[2] with the other. Based on Henriquez's training about the characteristics of armed persons, Henriquez was alert to the possibility that the defendant was carrying a firearm.

After riding past two houses, the defendant attempted to turn onto a side street but, continuing to steer with only one hand, lost control and fell off his bicycle. He broke his fall with one hand, keeping the other on his waistband. Henriquez pursued on foot and saw the defendant run down a driveway toward the rear of a house, continuing to clutch his waistband. Behind the house, the defendant, still holding his waistband, climbed over a five- or six-foot wooden fence,[3] breaking it in the process, and entered an adjacent back yard that in turn bordered

---

[2] We use the term waistband for convenience, recognizing that there is no evidence bearing on whether the item the defendant carried was tucked into his waistband or instead contained in a pocket near his waist area. The distinction is not material here.

[3] Henriquez variously referred to this obstacle as either a fence or a gate. For clarity, and viewing the evidence in the light most favorable to the Commonwealth, we use the term "fence," in accordance with what the Commonwealth's exhibits appear to depict.

on other back yards.  Henriquez attempted to follow, but a large dog appeared, causing Henriquez to suspend the chase and lose sight of the defendant.

Henriquez contacted his partners and other officers by radio and arranged for them to set up a perimeter to ensure that no one could leave the area of back yards without being observed.[4]  The detectives began to search the yards.  Within ten minutes, on the far side of the yard that the defendant had entered by climbing over the fence, they found a white sock at the base of a second fence, approximately four feet tall.  Although the sock was knotted closed, they could see that it contained an object shaped like a firearm.  Just on the other side of the fence, in another yard, they found a pair of discarded sneakers.

A further search located the defendant hiding in a back yard a few houses down the block.  He was wearing loose-fitting sweatpants.  He was not wearing any shoes, and on cross-examination Henriquez agreed that one could infer the defendant had "r[u]n out of his sneakers" because he was "going so fast." The defendant was arrested and frisked; no contraband was found.

---

[4] Other detectives testified that they neither saw nor learned of anyone leaving that area during the relevant time.

Nor was any other contraband located in any of the back yards searched that day.

The object inside the knotted sock proved to be a semiautomatic pistol, loaded with a magazine capable of holding eight rounds of ammunition and containing seven.  No usable fingerprints were found on any of the items.  A police firearms examiner found the pistol to be operable and to have a barrel length of 3.75 inches.

The examiner further testified that, unless the pistol's slide were open, there would be no way to tell if the pistol was loaded simply by looking at it.[5]  To make that determination, one would have to attempt to fire it, or to remove the magazine to see if it contained ammunition.  Henriquez agreed; he contrasted a pistol to a revolver, in which ammunition would be visible in the cylinder before being rotated into firing position.  Henriquez further agreed that "in this case, if [he] were to be given that weapon not knowing anything about it, [he] couldn't tell if it was loaded or unloaded."

Discussion.  The defendant challenges the sufficiency of the evidence underlying each of his three convictions.[6]  We

---

[5] The examiner qualified this answer by adding, "[u]nless you look down the barrel which is always a bad thing."

[6] His motions for required findings of not guilty at the close of the Commonwealth's case and of all the evidence were denied.

address them in turn, asking "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 677 (1979), quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 319 (1979).

1. <u>Possession of firearm</u>. The defendant first argues that there was insufficient evidence that he possessed the firearm. We are not persuaded. The defendant fled the police, clutching an item in his waistband, an action that Henriquez testified was characteristic of persons carrying firearms. The item was sufficiently important to the defendant that he devoted one hand to maintaining possession of it while steering (and falling off) his bicycle and while climbing over (and breaking) the fence. The firearm was found next to another fence along the path of his apparent flight. Shoes inferentially belonging to him were found just on the other side of that fence. His attempt to hide from the police gave rise to a reasonable inference of consciousness of guilt, as did his initial, unprovoked flight. No other contraband was located in the area that might have explained his flight, nor was anyone else seen leaving the area. These circumstances, taken together, were sufficient to allow

the jury to conclude that the defendant knowingly possessed the firearm.  Cf. Commonwealth v. Dyette, 87 Mass. App. Ct. 548, 552-553 (2015) (evidence of possession of firearm sufficient where defendant fled when officers approached, firearm and defendant's clothing were found along path of his flight, and, when apprehended, defendant lied to police about circumstances).

2.  Knowledge that firearm was loaded.  "[T]o sustain a conviction under G. L. c. 269, § 10 (n), the Commonwealth must prove that a defendant knew the firearm he or she possessed was loaded."  Commonwealth v. Brown, 479 Mass. 600, 601 (2018).  If "the Commonwealth present[s] no evidence . . . that could allow any rational trier of fact to find beyond a reasonable doubt that the defendant knew the firearm was loaded, the conviction of possession of a loaded firearm without a license cannot stand."  Id. at 601-602.  In Brown, "it was not possible to discern merely by observation whether the pistol . . . was loaded; the magazine was inserted inside the handle and was not visible."  Id. at 608.  Absent any other evidence that the defendant knew the firearm was loaded, the court held the evidence insufficient.  Id. at 609.  See Commonwealth v. Galarza, 93 Mass. App. Ct. 740, 748 (2018) (same).

More recently, we held in Commonwealth v. Resende, 94 Mass. App. Ct. 194, 201 (2018), that, although it was a "close case," id. at 200, the evidence was sufficient to prove beyond a

reasonable doubt that the defendant knew the firearm he possessed was loaded.  There we said:

> "Unlike the facts in Brown, . . . the defendant, in the case before us, was found with the firearm in his waistband.  A commonsense inference from that fact alone is that a person would check to see if the firearm was loaded before putting it in his waistband.  This rational inference is strengthened by the additional fact that the defendant admitted that he had some familiarity with firearms.  In addition, the inference that the defendant was aware the firearm was loaded is strengthened even further by the evidence that the defendant was alone in the nighttime.  Finally, the fact finder could have found that moments before the police arrived, the defendant had been threatening someone and made reference to a firearm.  These facts, in combination, permit an inference and a finding beyond a reasonable doubt that the defendant was aware that the firearm found in his waistband was loaded" (emphasis added).

Id. at 200-201.  Importantly, although it was a reasonable inference that a person carrying a firearm in his (or her) waistband would know whether it was loaded,[7] we did not rest our decision on that inference alone.  Rather, there were additional circumstances that, "in combination" with the inference just mentioned, permitted the jury to find the knowledge element beyond a reasonable doubt.[8]  Id. at 201.

---

[7] Such an inference could rest on the idea that a firearm carried in a waistband creates a heightened risk of self-injury in the event of an accidental discharge, so that a prudent person would check whether the firearm is loaded, in order to be able to take additional precautions if necessary, before carrying the firearm in that manner.

[8] In Commonwealth v. Silvelo, 96 Mass. App. Ct. 85 (2019), we rejected the defendant's challenge to the sufficiency of the evidence that he knew a firearm was loaded.  We did so "for a

Here, in contrast, we have only the "commonsense inference" that the defendant would have "check[ed] to see if the firearm was loaded before putting it in his waistband."  Id. at 200. The Commonwealth's brief offers nothing more.[9]  This case is missing the three additional factors that in Resende, despite being a "close case," pushed the evidence over the line of sufficiency:  there was no evidence that the defendant here was familiar with firearms, or that he carried the pistol while alone in the nighttime,[10] or that he had threatened anyone and mentioned a firearm.  This case also lacks any evidence that the

---

simple reason:  the firearm in question [was] a revolver and, as such, the bullets in the cylinder were clearly visible."  Id. at 90.  We then added that, as in Resende, "the jury could have reasonably concluded that the defendant would have checked to see if the firearm was loaded before he put it in his pocket." Id.  Nothing in our discussion of Resende indicated that that factor alone was sufficient to permit a finding of the defendant's knowledge beyond a reasonable doubt.

[9] Indeed, the Commonwealth's entire argument on knowledge is that "[b]ecause someone had to place the magazine into the firearm, and because the defendant carried the firearm with the magazine on his person, it was a reasonable inference that he loaded the magazine into the firearm that he carried on his person, and thus saw and was aware of ammunition."  We find this difficult to distinguish from the position, implicitly rejected in Brown, 479 Mass. at 608-609, that bare possession of a loaded firearm is sufficient to prove knowledge that it is loaded.

[10] Carrying in one's waistband while alone in the nighttime might support an inference that the firearm was intended to be ready for immediate use and thus that it was known to be loaded. Carrying while with another person and during daylight, as occurred here, does not raise such an inference, at least not with the same force.

pistol had been fired while in the defendant's possession,[11] or that any ammunition was separately recovered from the defendant's person or belongings,[12] or that the pistol's loaded status would have been evident merely by looking at it,[13] or that the defendant made any other statement indicative of knowledge.[14] Moreover, the pistol here was tied inside a sock, making it harder to draw the inference that the defendant inspected it -- i.e., slid open the magazine to check for bullets -- before putting it in his waistband, or that the defendant intended it to be ready for immediate use and thus knew that it was loaded. See note 10, supra.

The Commonwealth suggested at oral argument that because the pistol here was loaded with seven rounds, its "heft" put the

---

[11] Cf. Commonwealth v. Mitchell, 95 Mass. App. Ct. 406, 413 (2019) (suggesting that evidence would have been sufficient to prove defendant's knowledge that gun was loaded if, along with evidence that gun was fired during defendant's struggle with another person at scene, evidence showed that defendant brought gun to scene).

[12] Cf. Commonwealth v. Paul, 96 Mass. App. Ct. 263, 266-267 (2019) (evidence of knowledge sufficient where, among other things, defendant was carrying firearm in backpack on his person, knew precisely where in backpack it could be found, and kept fully loaded magazine in same section of backpack).

[13] See Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 90 (2019). Contrast Brown, 479 Mass. at 608-609; Galarza, 93 Mass. App. Ct. at 748.

[14] We intend no exhaustive catalog of the factors that could support an inference of knowledge.

defendant on notice that it was loaded.  But the Commonwealth offers nothing to support this inference.  To the contrary, Henriquez agreed that "if [he] were to be given that weapon not knowing anything about it, [he] couldn't tell if it was loaded or unloaded."

The Commonwealth also suggested at oral argument that the defendant's repeated clutching at his waistband permitted not only the inference that he was concerned about the pistol falling out of his loose-fitting sweatpants, but, in turn, a second inference:  that he was concerned about an accidental discharge (thus proving he knew the pistol was loaded).  But "a conviction may not rest upon the piling of inference upon inference or conjecture and speculation."  Commonwealth v. Silva, 482 Mass. 275, 289 (2019), quoting Commonwealth v. Reaves, 434 Mass. 383, 390 (2001).  Moreover, the inference that the defendant was concerned about the pistol falling out of his pants could plausibly give rise to other inferences.  These include that he was concerned about dropping and losing the pistol, or concerned about dropping an unlicensed pistol directly in the pursuing officer's path.[15]  The jury could only

---

[15] Either or both of these inferences could explain the defendant's behavior without requiring, as the Commonwealth's argument does, the additional assumption that he knew the pistol was loaded.

guess at which concern(s) motivated the defendant, and "we have made clear that a jury may not use conjecture or guesswork to choose between alternative inferences." Silva, supra at 290, quoting Commonwealth v. Dostie, 425 Mass. 372, 376 (1997).

We thus return to the question: is the inference arising from the defendant's carrying the firearm in his waistband, standing alone, sufficient to prove his knowledge beyond a reasonable doubt? We do not think it is. Latimore requires more than that the evidence merely be "sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged." Latimore, 378 Mass. at 677, quoting Commonwealth v. Sandler, 368 Mass. 729, 740 (1975). "Additionally, the evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.'" Latimore, supra, quoting Commonwealth v. Cooper, 264 Mass. 368, 373 (1928). Thus, "it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." Latimore, supra at 677-678. Notably, the Supreme Judicial Court recently approved of a jury instruction that stated that "any inference

constituting an element of an offense must be established beyond a reasonable doubt."  Silva, 482 Mass. at 289.  See Commonwealth v. Lee, 460 Mass. 64, 71 (2011), quoting Commonwealth v. Rodriguez, 456 Mass. 578, 583 (2010) (reversing conviction where inferences required to prove element of offense "may be plausible, but cannot bear the weight of proof beyond a reasonable doubt").

To be sure, common sense dictates that a person check whether a firearm is loaded before further handling or carrying it, whether in a compartment of a vehicle, in a holster, or in a sock tucked into a waistband.  But persons who possess firearms without a license cannot be presumed with any high degree of confidence to follow common sense in the area of firearm safety.[16]  The inference that the defendant would check whether a firearm is loaded before putting it in his waistband simply is not strong enough, standing alone, to prove beyond a reasonable doubt his knowledge that it is loaded.

---

[16] Common sense likely also dictates that a person not carry a firearm in a waistband in the first place (which creates a risk of dropping and potentially damaging it), yet, as this case illustrates, unlicensed persons often do so.  Cf. Commonwealth v. Matta, 483 Mass. 357, 366 (2019) (judge credited officer's concern that person who adjusted waistband area with both hands might be carrying unlicensed firearm, based on officer's experience that people who carry unlicensed firearms often carry them inside waistband).

3.  Trespass.  Finally, we reject the defendant's claim that there was insufficient evidence that his entry into any of the back yards he traversed during the chase had been forbidden by the person in control thereof, so as to constitute a trespass.  The criminal trespass statute provides in pertinent part that "[w]hoever, without right enters or remains in or upon the . . . improved or enclosed land . . . of another, . . . after having been forbidden so to do by the person who has lawful control of said premises, whether directly or by notice posted thereon, . . . shall be punished" (emphasis added). G. L. c. 266, § 120.  We have held that, where there is no notice posted, the term "'directly' . . . does not require a person having control of unposted premises to be on those premises at all times of the day or night to ward off intruders. Rather, he may directly forbid entry to the premises by securing them with fences or walls and locked gates or doors." Commonwealth v. A Juvenile (No. 1), 6 Mass. App. Ct. 106, 108 (1978).  See Commonwealth v. Scott, 71 Mass. App. Ct. 596, 603 (2008) (same).  The jury here were so instructed.

There was evidence that after entering the first back yard, the defendant climbed over a five- or six-foot wooden fence, breaking it in the process, to enter another back yard.  That yard was in turn separated from the next yard by a fence, on the other side of which sneakers, inferentially the defendant's,

were found.  From all of this the jury could have found beyond a reasonable doubt that the owner of the yard into which the defendant climbed had, at least at the points where the defendant entered and exited the yard, forbidden entry to the yard by fences, making the defendant's entry a trespass.[17]

Conclusion.  The judgment on the charge of possessing a loaded firearm without a license is reversed, the verdict is set aside, and judgment shall enter for the defendant.  The remaining judgments are affirmed.

So ordered.

---

[17] We reject the defendant's argument that the Commonwealth was required to negate the possibility that "neighborhood practices" might have "allow[ed] access for yard crossings, particularly by teenagers," or that the fences were merely "decorative or incomplete."  The defendant cites no authority for this argument, which he did not raise at trial through a request for a jury instruction or otherwise.  Nor did the evidence raise any such possibility.  To the contrary, the Commonwealth offered in evidence two photographs of the fence the defendant climbed over and broke; they show a continuous five- or six-foot stockade fence, completely separating one yard from the next.  Other than the damage caused by the defendant, the fence was fully intact, thus in no way suggesting any neighborhood practice of climbing over it.