APPEALS COURT 
 
 COMMONWEALTH vs. JULIO C. FERREIRA ARTUR

 
 Docket:
 24-P-235
 
 
 Dates:
 February 4, 2025 – May 15, 2025
 
 
 Present:
 Henry, Smyth, & Toone, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Firearms. Evidence, Firearm. Practice, Criminal, Required finding, Instructions to jury, Harmless error. Error, Harmless.
 
 

  
      Complaint received and sworn to in the Central Division of the Boston Municipal Court Department on November 29, 2021.
      The case was tried before Mark H. Summerville, J.
      K. Hayne Barnwell for the defendant.
      Alyssa Hatfield (Mackenzie Slyman, Assistant District Attorney, also present) for the Commonwealth.
      TOONE, J.  Following a trial in the Boston Municipal Court, a jury found the defendant, Julio C. Ferreira Artur, guilty of possession of a rifle without a license, G. L. c. 269, § 10 (a); possession of an unloaded rifle, on a public way, that is not enclosed in a case, G. L. c. 269, § 12D (b); and possession of ammunition without a firearm identification (FID) card, G. L. c. 269, § 10 (h) (1).[1]  On appeal, the defendant claims that his two convictions of unlawful possession of a rifle must be reversed because there was insufficient evidence that the weapon on which the convictions were based met the statutory definition of a rifle:  "a weapon having a rifled bore with a barrel length equal to or greater than 16 inches and capable of discharging a shot or bullet for each pull of the trigger."  G. L. c. 140, § 121.  The defendant also contends that his conviction of possession of ammunition must be vacated because, without the benefit of the Supreme Judicial Court's guidance in Commonwealth v. Guardado, 491 Mass. 666, 692-693 (Guardado I), S.C., 493 Mass. 1 (2023) (Guardado II), cert. denied, 144 S. Ct. 2683 (2024), the judge did not instruct the jury that the absence of an FID card is an essential element of the offense and that error was not harmless beyond a reasonable doubt.  We agree on both grounds.[2]  Accordingly, we reverse the judgments, set aside the verdicts, and order judgments to enter for the defendant on the two convictions involving possession of a rifle, and we vacate the judgment of conviction of possession of ammunition without an FID card.  The Commonwealth may retry the defendant on the ammunition possession charge if it so chooses.  See Guardado II, supra at 12.  See also Commonwealth v. Crowder, 495 Mass. 552, 564 (2025).
      Background.  We summarize the facts in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  Around 4:45 A.M. on November 28, 2021, two Boston police officers responded to a radio call in the North End section of Boston.  Other officers had already arrived at the scene and had stopped the defendant on the sidewalk.  The defendant was sitting with a blanket over his shoulders and appeared to be intoxicated.  To his left was a blue bicycle, and to the left of the bicycle were two black trash bags, all within five yards of the defendant.  Using his flashlight to inspect the trash bags, an officer saw what he recognized as the barrel of a gun, which he secured.  After the defendant was handcuffed, another officer pat frisked him and found in his jacket pockets two magazines containing thirteen cartridges of ammunition.  
      Because the defendant spoke only Portuguese, a State trooper fluent in that language was called to assist.  After the trooper arrived, he advised the defendant of his Miranda rights.  In response to the trooper's questions, the defendant stated that he had found the weapon in the trunk of an unlocked white car that did not belong to him, and that he did not have a license to carry.  
      Among the witnesses who testified for the Commonwealth was a detective from the police department's firearms analysis unit who had inspected the weapon.  The defendant did not challenge the detective's expertise as a ballistician.  On direct examination, the prosecutor asked the detective to distinguish between a pistol and a rifle, and the detective responded that a rifle must have a barrel length that is sixteen inches or greater and be capable of discharging a shot or projectile.  He further testified that he measured the barrel length of the weapon recovered in this case to be twenty-two and one-eighth inches and successfully test-fired it into a steel tank filled with water.  He concluded that the weapon was a rifle "[a]ccording to Mass General Law" because "of the barrel length that I mentioned earlier and the fact that it was able to discharge a projectile."
      During cross-examination, defense counsel asked the detective to define the "bore" of a rifle.  The detective stated that it is "the portion inside the barrel" from "the muzzle to the chamber."  Asked whether there is a difference between a rifle and a shotgun, the detective testified that a shotgun "normally contains a smooth barrel" and is designed to fire shot instead of a bullet.  At this point, the judge intervened and asked the detective to explain the difference between a rifle and a shotgun.  The detective testified that "a shotgun has a smooth bore and a rifle has a rifle bore designed to -– a shotgun will normally project a number of pellets where a rifle will usually project a single projectile."  The detective did not testify whether the weapon at issue had a rifled or smooth bore, and he did not explain what a rifled (or "rifle") bore is.[3]  
      The defendant moved for required findings of not guilty on both counts charging him with possession of a rifle, asserting that the Commonwealth failed to prove that "the item involved in this case is a rifle."  The prosecutor argued that the motion should be denied because the "detective clearly testified that he certified the item as a rifle."  The judge denied the motion, but stated that the defendant had "a legitimate argument regarding whether this item is a rifle or a shotgun based upon the faulty, frankly, definition that was given with regard to the shotgun [sic] . . . by the Commonwealth's alleged expert."
      Discussion.  1.  Sufficiency of the evidence that the weapon was a rifle.  The defendant contends that the judge erred in denying his motions for required findings of not guilty on the two charges involving unlawful possession of a rifle because the Commonwealth did not prove beyond a reasonable doubt that the weapon found near the defendant was a rifle under G. L. c. 140, § 121.  We agree.
      When reviewing a challenge to the sufficiency of the evidence, "we ask whether, taking the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the Commonwealth, any rational trier of fact could find that each of the essential elements of the crime has been proved beyond a reasonable doubt."  Commonwealth v. Gonzalez Santos, 100 Mass. App. Ct. 1, 3 (2021), citing Latimore, 378 Mass. at 677-678.  The Latimore standard requires the evidence to be "sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged."  Latimore, supra at 677, quoting Commonwealth v. Sandler, 368 Mass. 729, 740 (1975).  "Additionally, the evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.'"  Latimore, supra, quoting Commonwealth v. Cooper, 264 Mass. 368, 373 (1928).
      "To convict an individual of unlawful possession of a firearm, the Commonwealth must prove, beyond a reasonable doubt, that the defendant knowingly possessed an object, and that the object met the legal requirements of being a firearm as defined in G. L. c. 140, § 121."  Commonwealth v. Bonner, 489 Mass. 268, 287 (2022).  See Commonwealth v. Buttimer, 482 Mass. 754, 769 n.20 (2019) (General Laws c. 269, § 10 (a) "incorporates the definitions of firearms, rifles, and other weapons contained in G. L. c. 140, § 121").  In the amended complaint, the Commonwealth charged the defendant with unlawfully possessing a rifle.  Consistent with the definition of "rifle" under G. L. c. 140, § 121, the judge instructed the jury that, to find the defendant guilty under either G. L. c. 269, §§ 10 (a) or 12D (b), the Commonwealth had to prove beyond a reasonable doubt that the defendant possessed "a weapon having a rifled bore with a barrel length equal to or greater than 16 inches, capable of discharging a shot or bullet for each pull of the trigger."
      When viewed in the light most favorable to the Commonwealth, the evidence at trial was insufficient to prove that the weapon had "a rifled bore," the first of the statutory definition's three requirements.  See G. L. c. 140, § 121.[4]  The detective from the firearms analysis unit testified that the weapon was a rifle because it had a sufficiently long barrel and could fire a projectile, but he did not address the definition's first requirement and was not asked about it by the prosecutor.  The detective touched on the issue during cross-examination when he explained that the bore of a rifle is "the portion inside the barrel" and that a shotgun "normally contains a smooth barrel [sic]."  Even assuming that the detective meant to say "smooth bore," he did not testify that a rifle must have a rifled bore or explain the difference between the two.  After the judge asked the detective whether his testimony captured "the extent of the difference between a rifle and a shotgun," the detective replied only that "[g]enerally . . . a shotgun has a smooth bore and a rifle has a rifle [sic] bore designed to . . . ," and then went on to testify about the number of projectiles capable of being fired from the weapon.
      This testimony was insufficient to prove that the weapon was a rifle under G. L. c. 140, § 121.  The detective never testified that the weapon in this case had a rifled bore, or even that he examined its bore.[5]  He did not explain what a rifled bore means, other than obliquely suggesting it was something other than "smooth."  The Commonwealth argues that that the jury could still infer that the weapon had a rifled bore from the fact that the detective asserted it met the statutory definition of a rifle.  The problem with that argument is that the detective twice defined what a rifle is -- first generally, and then in connection with what he asserted the "Mass General Law" requires -- and both times he omitted the rifled bore requirement.  Absent any other discussion of the weapon's bore, it cannot be reasonably inferred from the detective's testimony that this requirement of the definition was satisfied.
      The Commonwealth's reliance on Commonwealth v. Harrison, 100 Mass. App. Ct. 376, 396 (2021), is misplaced.  In that case, the defendant argued that there was insufficient evidence that one of the two firearms underlying the firearm possession charges satisfied the operability test for a shotgun under G. L. c. 140, § 121, because the Commonwealth's ballistics expert did not specifically testify that he test-fired that weapon.  Harrison, supra.  He did, however, testify that a safety check and test-firing were invariably part of his methodology for examining firearms, and he concluded that the shotgun met the statutory definition based on his examination of that weapon.  Id.  We found this testimony sufficient for the jury to infer that "the expert concluded that the shotgun met the legal definition of a firearm only because it successfully test-fired."  Id.  Here, by contrast, the detective did not testify that he inspected the weapon's bore, did not testify that inspection of the bore was part of his general methodology for examining a weapon, and did not acknowledge that a rifled bore is part of the statutory definition of a rifle.
      Apart from the detective's testimony, the Commonwealth contends that a rifled bore is "a distinct physical characteristic" which the jury could have seen "to some extent by simply staring down the barrel of the gun."  We are not persuaded.  While it is true that court officers made the rifle, magazines, and ammunition available to the jury for viewing (at different times) during their deliberations, it is unclear whether the jurors would have been able to inspect the interior of the rifle's barrel, given safety concerns.[6]  Even if they had, the rifling of a bore is not a "universally familiar" and understood attribute of a weapon such that jurors can identify it "simply by looking at one."  Commonwealth v. Nieves, 43 Mass. App. Ct. 1, 3 (1997) (contrasting gun's barrel length with its "capacity to discharge a bullet").  No witness told the jury what a rifled bore is, and the judge did not do so either in his instructions.[7]  As the United States Court of Appeals for the Seventh Circuit observed in a case involving a similar challenge to the sufficiency of the evidence underlying a rifle possession conviction, "why would the jurors have bothered to look down the barrel to determine if the bore was 'rifled,' if they had no explanation of what 'rifled' meant?"  United States v. Meadows, 91 F.3d 851, 857 (7th Cir. 1996).
      The burden on the Commonwealth to prove that a weapon satisfies a particular definition under G. L. c. 140, § 121, is "not a heavy one," but "some competent evidence" must be presented.  Nieves, 43 Mass. App. Ct. at 2.  See, e.g., Commonwealth v. Marrero, 484 Mass. 341, 347-348 (2020) (testimony from one eyewitness that defendant "had my gun, and he shot it," and from another eyewitness that defendant "set off a shot," along with surveillance footage of object resembling firearm being held in air and two flashes of light emitting from it, and two casings found on scene "consistent with actual working ammunition," sufficient to establish that weapon could discharge shot or bullet); Commonwealth v. Evans, 439 Mass. 184, 198, (2003); cert. denied, 540 U.S. 923 (2003), and 540 U.S. 973 (2003) (testimony that defendant removed gun from pocket permitted grand jury to infer that its barrel was less than sixteen inches long); Nieves, supra at 3-4 (in addition to expert evidence, "the testimony of persons who handled the gun" or "testimony of persons familiar with guns" sufficient to prove that weapon satisfies statutory definition).  Because there was no competent evidence that the weapon at issue had a rifled bore, the defendant's convictions for unlawful possession of a rifle under G. L. c. 269, §§ 10 (a) and 12D (b) must be reversed.
      2.  Failure to instruct that the Commonwealth had the burden of proving that the defendant lacked an FID card.  We must also vacate the defendant's conviction under G. L. c. 269, § 10 (h) (1), of possession of ammunition without an FID card pursuant to G. L. c. 140, § 129C.[8]  Following the United States Supreme Court's decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), the Supreme Judicial Court ruled that a judge must instruct jurors that the Commonwealth bears the burden of proving that a defendant lacked an FID card.  See Guardado I, 491 Mass. at 692-693.  See also Commonwealth v. Wittey, 492 Mass. 161, 187 (2023).  Those decisions apply to this case because the defendant's appeal was pending when they were issued.  Guardado I, supra at 694.  Accordingly, it was error not to instruct the jury that absence of an FID card was an essential element of the unlawful possession of ammunition charge.
      Because the clairvoyance exception applies, it is immaterial that the defendant did not object to the absence of a licensure jury instruction; rather, the appropriate question is "whether the error was harmless beyond a reasonable doubt" (citation omitted).  Commonwealth v. Bookman, 492 Mass. 396, 401 (2023).  "[T]he 'essential' question [in analyzing harmlessness beyond a reasonable doubt is] 'whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the verdicts.'"  Commonwealth v. Tyree, 455 Mass. 676, 701 (2010), quoting Commonwealth v. Perrot, 407 Mass. 539, 549 (1990).  See Bookman, supra (failure to give licensure instruction was harmless beyond reasonable doubt in light of undisputed police testimony that defendant lacked necessary license).
      The Commonwealth contends that the error was harmless because there was uncontroverted evidence that the defendant did not have a license to carry a firearm.  Specifically, the trooper who interviewed the defendant in Portuguese testified that he asked the defendant whether he had a license to carry, and the defendant said that he "[d]idn't have one."  Setting aside the defendant's challenges to the voluntariness and reliability of this statement, it did not show that the failure to instruct the jury on the Commonwealth's burden to prove the absence of an FID card was harmless.  "A license to carry a firearm is distinct from an FID card."  Commonwealth v. Johnson, 461 Mass. 44, 55 n.14 (2011).  Compare G. L. c. 140, §§ 131 and 131F (license to carry), with G. L. c. 140, §§ 129B and 129C (FID card).  To be sure, because at the relevant time a license to carry firearms provided all the privileges of an FID card, including the right to possess "ammunition therefor," see G. L. c. 140, § 131 (a), as amended through St. 2014, c. 284, §§ 46 and 47, the existence of such a license would have been a defense to a charge under G. L. c. 269, § 10 (h) (1).  Evidence that the defendant lacked a license to carry, however, did not prove that he lacked an FID card, the existence of which would have been a defense to the charge as well.  See G. L. c. 140, § 129C, as amended through St. 2014, c. 284, § 41.  Accordingly, the instructional error was not harmless beyond a reasonable doubt.  See Bookman, 492 Mass. at 401.
      Conclusion.  The judgments of conviction on the charges of possession of a rifle without a license and possession of an unloaded rifle on a public way are reversed, the verdicts are set aside, and judgments shall enter for the defendant.  The judgment of conviction on the charge of possession of ammunition without an FID card is vacated, the verdict is set aside, and the case is remanded to the Boston Municipal Court for further 
proceedings consistent with this opinion.
 
 
So ordered.
footnotes

          [1] The judge allowed the defendant's motion for a required finding of not guilty on the charge of larceny of a firearm, G. L. c. 266, § 30 (1).  The jury acquitted the defendant of breaking and entering into a vehicle at night with the intent to commit a felony, G. L. c. 266, § 16.  
               [2] We do not address the defendant's arguments that there was insufficient evidence that he knowingly possessed the weapon, or that the judge erred in instructing the jury that intoxication was not a defense to the possession charges.  As discussed infra, we reject the defendant's sufficiency challenge to his conviction of unlawful possession of ammunition.
          [3] After a sidebar conference, the judge declined to allow the prosecutor to ask the detective additional questions.  Although some portions of the sidebar conference were inaudible, the transcript does not indicate and the Commonwealth does not contend that the prosecutor sought to ask the detective follow-up questions about the rifle's bore.
          [4] Although, as discussed herein, no definition of "a rifled bore" was provided through the testimony or jury instructions, we note for background that the term refers to the machining of spiraled ridges -- also called "lands" and "grooves" -- in the inner surface of a barrel which are "designed to spin the projectile as it leaves the gun, stabilizing the projectile in flight."  Commonwealth v. Pytou Heang, 458 Mass. 827, 838 (2011).
          [5] The detective testified that he examined and recorded on a computer the weapon's make, model, caliber, place of manufacture, overall length, barrel length, action, color, serial number, "any particular eccentricities" about it, and "any accessories that were on top of it or near it," but did not mention its bore.
          [6] To that point, the detective informed the jury that "[t]he first thing we're taught as firearms examiners is that the firearm is always loaded," he "pretend[s]" that a firearm is loaded even when he knows it is not, and he always keeps "the barrel in a safe direction, not pointing it at anybody."  
               [7] In his instructions, the judge contrasted a rifle with a shotgun, which, he stated, "is defined as a weapon having a smooth bore with a barrel length equal to or greater than 18 inches, with an overall length equal to or greater than 26 inches, capable of discharging a shot or bullet for each pull of the trigger."  The judge defined the term "barrel length"; he was not asked to and did not define "bore," "rifled bore," or "smooth bore."
          [8] We reject the defendant's claim that there was insufficient evidence that he knowingly possessed the ammunition, as required for a conviction under G. L. c. 269, § 10 (h) (1).  See Commonwealth v. Joyner, 467 Mass. 176, 180 (2014) (reviewing sufficiency challenge notwithstanding defendant's failure to move for required finding because conviction on insufficient evidence presents substantial risk of miscarriage of justice).  Two ammunition magazines, at least one having exposed cartridges, were found in the pockets of the jacket the defendant was wearing when arrested.  Capable of holding fourteen cartridges, the magazines held thirteen at the time of arrest.  Those facts were sufficient to show that the defendant knowingly possessed the ammunition.  Cf. Commonwealth v. Brown, 479 Mass. 600, 608 (2018) (insufficient evidence that defendant knew pistol in his vehicle was loaded where magazine was inserted inside handle of weapon and was not visible).